145 P.3d 855

**Penni M. EGGER, Plaintiff–Appellant,**

v.

**Steven R. EGGER, Defendant–Appellee.**

**No. 27481.**

Intermediate Court of Appeals of Hawai'i.

Sept. 25, 2006.

Elizabeth C. Melehan, on the brief, Wailuku, for Plaintiff–Appellant.

BURNS, C.J., WATANABE and FOLEY, JJ.

1. Judge Simone C. Polak presided.

2. The question whether the family court was authorized to delegate its authority to a court-appointed guardian ad litem to finally decide child physical custody/visitation issues is not an issue in this appeal.

Opinion of the Court by BURNS, C.J.

Plaintiff–Appellant Penni M. Egger (Penni) appeals from the August 1, 2005 "Order Granting Defendant's Motion to Dismiss Plaintiff's Motion and Affidavit for Post–Decree Relief Filed on September 3, 2004, Filed Herein on March 3, 2005" entered in the Family Court of the Second Circuit.[1] We reverse this order and remand for further proceedings consistent with this opinion.

Penni and Defendant–Appellee Steven R. Egger (Steven) were married on September 18, 1993. Their first daughter was born on April 14, 1994, and their second daughter was born on July 10, 1996 (the children). On March 4, 1999, Judge Douglas S. McNish entered a divorce decree which awarded the parties joint legal and physical custody of the children with a specified parenting schedule. The divorce decree also ordered, in part:[2]

> (2) *Custody Guardian ad Litem.* Marvin W. Acklin, Ph.D., shall be appointed Custody Guardian ad Litem to assist the parties and the children with respect to any disputes arising as a result of the above sharing arrangement. The Custody Guardian ad Litem shall have the authority to make recommendations and, if necessary, changes to the sharing arrangement as the Custody Guardian ad Litem then believes is appropriate and in the best interest of the children; provided, however, said changes shall be subject to review by this Court.

On March 13, 2001, Steven filed a motion in which he requested, based on Dr. Acklin's January 11, 1999 report and recommendations, "that this Court order a re-evaluation of custody and time-sharing to be performed by Dr Acklin." On November 15, 2001, after a trial, Judge Eric G. Romanchak entered an order continuing the joint legal and physical custody of the children, but changing the specifics of the parenting schedule, and ordering in part that (1) "[n]either party shall drink alcohol or use prohibited drugs twenty-four hours before and while the children are in their care, custody and control[,]" (2)

"[p]ursuant to [Steven's] prior agreement, he shall continue to be solely responsible for the children's private school education[,]" and (3) "Dr. Marvin Acklin is hereby discharged as Custody Guardian Ad Litem."

On September 3, 2004, Penni filed a motion (September 3, 2004 Motion) seeking sole legal and physical custody of the children and enforcement of the order from November 15, 2001 requiring Steven to pay for the Carden Academy tuition. On September 13, 2004, Steven filed a memorandum in opposition.

On October 7, 2004, pursuant to the stipulation of the parties, Judge Simone C. Polak entered an order appointing Jacque Ford as Guardian Ad Litem (GAL) for the children. That same day, the court entered a separate order that reflected the GAL's appointment and scheduled a trial for the September 3, 2004 Motion to occur on January 13 and 14, 2005. On December 6, 2004, the court entered an order rescheduling the trial to occur on January 20 and 21, 2005. By stipulation, the trial was rescheduled to occur on March 17 and 18, 2005.

The GAL filed the following reports: Report dated January 19, 2005 and filed on January 20, 2005 (January GAL report); report dated March 9, 2005 and filed on March 22, 2005 (March GAL report); report dated April 15, 2005 and filed on April 19, 2005; and report dated July 28, 2005 and filed on July 29, 2005 (July GAL report).

On March 3, 2005, Steven filed a motion to dismiss the September 3, 2004 Motion

> on the grounds that no material change in circumstances have [sic] occurred since the Order on Custody, Visitation, and Child Support entered by the Honorable Eric G. Romanchak on November 15, 2001.
>
> This Motion is brought pursuant to Rule 7 of the Hawaii Family Court Rules, the Memorandum in Support of this Motion and the records and files herein.

In a memorandum accompanying the motion to dismiss, Steven stated, in part:

> [Steven] has always had difficulty from time to time in having the girls welcome visitation with him. If this matter goes to trial, it is believed that both Dr. Merrill and [GAL] will testify independently that

they believe that [Steven's] difficulties are, in part, the result of [Penni's] parental alienation.

> The bottom line is that [Penni] now seeks to relitigate her same litany of complaints that she presented to Judge Romanchak in October, 2001 and hope [sic] that with a different Judge and a different GAL, she will get a better result. This Court should reject [Penni's] attempt at the proverbial "second bite at the apple".

Also in the memorandum, Steven quoted the following from the January GAL report:

> *Your Guardian will not tolerate any finger pointing and will not participate in a process that will only serve to have this case set for trial. Each attorney has stated that this case does not belong back in court. They appear to understand that it will be the children who will once again be the innocent victims and your Guardian feels strongly that [the children] need to be protected from further harm.*
>
> Your Guardian is confident that with the assistance of Dr. Merrill, Beverly Lundquist, a Guardian ad Litem and a therapist for Penni and Steve, *this family's problems can be resolved without further recriminations.* (Emphasis added).

Steven further stated:

> In addition, and separate and apart from [Penni's] failure to meet the legal standard, which alone justifies dismissal of her Motion, [Steven] suggests that implementing [GAL's] recommendations would be in the best interests of the children.
>
> . . . .
>
> [GAL] has recommended that [Steven] seek therapy. He is doing this with Dr. Breithautp. [GAL] has recommended that Ms. Lundquist be involved with both parents and both children; [Steven] has cooperated with that. [GAL] has recommended that Dr. Merrill be involved; [Steven] has cooperated with that and supports his involvement. [Steven] agrees that "each time the parents enter family court their stress level increases which ultimately negatively effects [the children]. Ms. Lundquist, with the concurrence of [GAL], recommended that [Steven's] time

with the girls be decreased, monitored and, then if the circumstances warranted, slowly increase as the girls appear more comfortable. [Steven] is willing to go along with that. [GAL] recommends that a GAL, be it [GAL] or someone else, continue to be involved; [Steven] agrees with that.

On March 16, 2005, by stipulation, the March 3, 2005 motion to dismiss was scheduled to be heard on April 6, 2005.

On March 18, 2005, by stipulation, the trial on the September 3, 2004 Motion scheduled for March 17 and 18, 2005 was rescheduled to occur on June 16 and 17, 2005.

In the March GAL report, GAL stated in part that "[Steven] has had limited contact with [the children] of late but appears to understand that until he has demonstrated an awareness of how his former parenting style negatively impacted his girls and unless it is radically enhanced, his access will be limited."

In a supplemental memorandum filed on April 4, 2005, Steven referred to parts of the March GAL report as follows:

> [GAL] noted that the "family is currently at a crucial stage and each parent must be aware that the decisions they are now making will either support their children's healing or may hinder their children's emotional well being."

> [GAL] believed that "settling this case out of Court would be a much needed step towards compromise between the parties, and would go far in helping diminish further distress with this family."

On April 5, 2005, Penni filed (a) a memorandum in opposition to the March 3, 2005 motion to dismiss, and (b) a request for attorney fees and costs.

At the hearing on April 6, 2005, the following was stated:

> [GAL]: Summary is today there has been numerous, difficult problems in this case. I have had to change access to meet the girls' needs. I have had to ask for specific professionals to be involved to assist, so the girls' needs will be met.

> I . . . feel that a trial will and would be very devastating for the girls. . . .

> I am hopeful that today . . . that I can actually settle this. And you obviously, you know, that's the way I would want or choose to go for the mom and dad to settle it without having to go to a hearing.

> . . . .

> [GAL]: . . . .

> [Steven] knows that visitation—someone needs to be there with him during visitation, and visitation will only increase based upon his parenting changes. He understands that. And he knows that is a requirement of mine.

> So—and these are changes that have occurred within the last 72 hours. I think I can settle it, but maybe I'm wrong.

> . . . .

> [COUNSEL FOR STEVEN]: The bottom line is, is this a material changes [sic] in circumstances? . . .

> So my point is that what makes this case unique is that the GAL, who is not an advocate for either side, is saying don't take this case to trial. That's going to defeat what you both want to do.

> . . . .

> [GAL] reports that it's not in the children's best interest to take this to trial, so working backwards, I find there's been no material change in circumstances.

> . . . .

> [COUNSEL FOR PENNI]: . . . .

> . . . .

> We would try to come to an agreement, and there's have [sic] been offers to settle and mediation, and efforts with [GAL] to avoid litigation to no avail. So it's—at some point in time there should be resolution for these children. It may be that resolution would be trial.

> . . . .

> THE COURT: . . . .

> And although the motion raises some issues that, I guess, can be argued to possibly amount to a change in circumstance, the Court does not feel that the issues raised in the motion amount to a material change of circumstance. And for

that reason, the Court will grant [Steven's] motion to dismiss.

The Court also obviously has considered the best interest of the children and the statement by the guardian that in-court litigation would increase the stress level to the family. . . .

. . . .

[COUNSEL FOR PENNI]: And so . . . if you dismiss the motion, you dismiss [GAL], they go back to three weekends a month. . . .

THE COURT: But the question is whether it's a material change in circumstance.

[COUNSEL FOR PENNI]: There is—

. . . .

[COUNSEL FOR PENNI]: —material enough to say that he goes from three weekends a month to supervised visits.

THE COURT: . . . .

. . . .

We have a psychologist on board. We have Ms. Lundquist on board. Dr. Merrill is on board. The parties are taking parenting classes with Ms. Keene. I mean, that's essentially the best of circumstances. And it would seem that, that should be the way that this matter should be resolved.

I don't think that there has been a material change of circumstance. . . . The Court would continue the appointment of [GAL] on this case.

The next question, though, is how long, and I think that's a valid question.

And, [GAL], do you have any input on that?

[GAL]: No. I think that's valid because it can't go on forever. We need resolution. Two, three months.

[COUNSEL FOR STEVEN]: That's fine.

[COUNSEL FOR PENNI]: Well, that's when we are set for trial, your Honor. So if we don't have an agreement, . . . I'm baffled that the Court doesn't find a material change in circumstance. Since [GAL] . . . has ordered in her powers under the appointment of GAL that [Steven] goes from three full weekends a month to su-

pervised visits, there has to have been a material change in circumstance.

. . . .

. . . The issue of whether there's a material change of circumstance should happen at trial. I mean, I have a right to have an evidentiary hearing on all of the things that happened without doing argument. It happens at trial.

. . . .

THE COURT: . . . .

. . . .

But, [GAL], let me ask you this: The reduction from the three weekends to what is supervised visitation now, that's a temporary idea on your part?

[GAL]: It's temporary and it's based upon observations, and like I said before, parenting and counseling. . . . And . . . to move forward is based upon behavioral changes within [Steven] and how he interacts with the girls and the girls interact with him. And that's where the parenting coach comes in to assist with all of this because then each parents [sic] gets the same message.

. . . .

THE COURT: . . . .

The Court is going to continue the appointment of [GAL] in this case. Court is going to still find and stick with its decision that there is no material change in circumstances. So the Court is granting the motion to dismiss. But we're going to set a further review hearing about two months.

[COUNSEL FOR PENNI]: Your Honor, how can we have a hearing if there's no motion[?] We . . . have nothing before the Court. . . .

. . . .

THE COURT: Okay. How about if the Court grants the motion to dismiss without prejudice pending a further report by [GAL] in two months?

. . . .

THE COURT: And if at that point [GAL] comes back and says well, it's till the same thing, then that seems to be almost—

[COUNSEL FOR STEVEN]: Let's see what she says.

[COUNSEL FOR PENNI]: Then why dismiss it? Then my client has to file a motion all over again and show a lack of change of circumstances from this dismissal.

. . . .

THE COURT: Okay. I'll make the dismissal without prejudice. I'll set a further hearing in two months. . . .

. . . .

[COUNSEL FOR PENNI]: How could that possibly be in the best interest of these children?

THE COURT: Because at the current time, [GAL] says it's in the best interest of the children to try to resolve this matter outside of court. The parties now know that it can come right back to court. . . .

. . . .

THE COURT: You know, frankly, I would hope that won't be necessary.

[COUNSEL FOR PENNI]: Your Honor, we have hoped that it would not be necessary for three years. . . .

THE COURT: Well, I'll give you folks two more months to figure it out. Okay. It will be without prejudice. Okay. Let's get a hearing date.

THE CLERK: June 6th at 1:30.

At the June 6, 2005 hearing, the court scheduled a "further review hearing" to occur on August 1, 2005, ordered the GAL to submit a report a week prior to that date, and stated, in part:

THE COURT: . . . I've looked at the legal issue, and at that point decided that there was not a significant change in circumstances that would warrant to relitigate the issue.

And secondly, . . . the point of having a guardian in a case is to get the investigation and to gather facts through the guardian ad litem with regards to the children. . . .

. . . .

And so the Court is looking at what is in the best interest of the children. And at this point as I've indicated before, I find there's a treatment team in place, guardian ad litem . . . working with the parties involved.

. . . .

[COUNSEL FOR PENNI]: Your Honor, . . . I want to make sure that the Court acknowledges that [GAL] has recommended only supervised visits, only monitored visits. Has drastically changed the 2001 Court order through her recommendations. And that the Court feels that's appropriate.

I mean, because I'm having a hard time reconciling the Court's finding of no material change in circumstance on one hand as a legal standard, and then at the same time saying [GAL] should go forward with supervised and monitored visits and the treatment team. I was just trying to reconcile and in some way wrap my mind around this idea; that as a legal standard there's been no material change in circumstances, but there's been enough change that [Steven] goes from three weekends a month from Thursday to Sunday to having supervised visits. I'm just trying to figure out how the Court makes that argument.

In the July GAL report, the GAL recommended

that, until otherwise determined by [GAL], all contact between [Steven] and the girls remain supervised by either [GAL] or by Julie Kean. This professional assistance will assure that events such as recorded in this report will not occur again. Such events are too damaging to [Steven's] relationship with [the children].

The "Order Granting Defendant's Motion to Dismiss Plaintiff's Motion and Affidavit for Post–Decree Relief Filed on September 3, 2004, Filed Herein on March 3, 2005" was entered on August 1, 2005, and states in part:

1. [Steven's] Motion to Dismiss [Penni's] Motion and Affidavit for Post–Decree Relief Filed on September 3, 2004, filed herein on March 3, 2005 is hereby granted without prejudice, pending a further report from [GAL].

2. [Steven's] oral Motion to request that Jacque Ford continue as [GAL] is hereby granted.

It appears that at the August 1, 2005 "further review hearing," nothing of significance occurred.

Penni filed a notice of appeal on August 31, 2005. This case was assigned to this court on June 20, 2006. Steven did not file an answering brief.

 To obtain the family court's change of a custody order, the movant "must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child." *Nadeau v. Nadeau*, 10 Haw.App. 111, 121, 861 P.2d 754, 759 (1993). These are the material issues. Clearly, Penni alleged a material change of circumstances since the previous custody order. There is no basis in the record authorizing a dismissal of the September 3, 2004 Motion.[3] Clearly, Penni presented evidence of a material change of circumstances since the previous custody order. There is no basis in the record authorizing a summary judgment in favor of Steven on the issues presented by the September 3, 2004 Motion.[4] Obviously, and for good reasons, GAL and the court wanted a settlement rather than a trial. To obtain one, they had to apply their expertise in motivating the parties to agree to a reasonable settlement. Absent such an agreement by the parties, however, the most the court could have done was to exercise its limited discretion to continue its postponement of the trial. It could not dismiss the September 3, 2004 Motion or rule against Penni by summary judgment.

Accordingly, we reverse the August 1, 2005 "Order Granting Defendant's Motion to Dismiss Plaintiff's Motion and Affidavit for Post–Decree Relief Filed on September 3, 2004, Filed Herein on March 3, 2005". We remand for further proceedings consistent with this opinion.

---

**3.** Hawai'i Family Court Rules (HFCR) Rule 12 (2006) states in part as follows:

> (b) How Presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: (1) lack of jurisdiction over the subject matter, (2) lack of jurisdiction over the person, (3) improper venue, (4) insufficiency of process, (5) insufficiency of service of process, (6) failure to state a claim upon which relief can be granted, and (7) failure to join a party under Rule 19. A motion making any of these defenses shall be made before pleading if a further pleading is permitted. No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or motion. If a pleading sets forth a claim for relief to which the adverse party is not required to serve a responsive pleading, the adverse party may assert at the trial any defense in law or fact to that claim for relief. If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and

not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

> (c) Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

**4.** HFCR Rule 56 (2006) states in part as follows:

> (a) For Claimant. A party seeking to recover upon a claim, counterclaim, or cross-claim may, at any time after the expiration of 20 days from the commencement of the action or after service of a motion for summary judgment by the adverse party, move with or without supporting affidavits for a summary judgment in the party's favor upon all or any part thereof.