**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**DEC 28 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

JIMMY SEARLES,

        Plaintiff-Appellant,

v.

STEVEN DECHANT, Deputy Warden
of Programs, Hutchinson KS; K.
ANDERSON, Staff Officer,
Hutchinson KS; DON MOORE, Unit
Team, Hutchinson KS; KHALIL A.
GREEN, Prison Chaplain, Hutchinson,
KS; MARJORIE VANHOOSE, Unit
Team, Hutchinson KS; DARWIN L.
THOMAS, Disciplinary
Administrative Officer, Hutchinson
KS; CHARLES SIMMONS, L. E.
BRUCE; SAM CLINE; CULLUM
HENRY; JAMES R. SANDERS;
GARY COWMAN,

        Defendants-Appellees.

No. 03-3347

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 00-CV-3213-MLB)

---

Submitted on the briefs:

Jimmy Searles, pro se.

Phill Kline, Attorney General, and Ralph J. DeZago, Assistant Attorney General, on the brief, Office of the Attorney General of Kansas, Topeka Kansas, for Defendants-Appellees.

---

Before **ANDERSON** and **BALDOCK** , Circuit Judges, and **MARTEN** ,[*] District Judge.

---

**MARTEN** , District Judge.

---

Jimmy Searles appeals from the district court's orders granting summary judgment for the defendants on his 42 U.S.C. § 1983 civil rights complaint, and denying his motion for reconsideration of the order of summary judgment. [**] We dismiss his appeal from the summary judgment order for lack of jurisdiction, and affirm the denial of his motion for reconsideration.

FACTS

At the time his claims arose, Searles was a Kansas state inmate, housed in the Hutchinson Correctional Facility (Facility). He has identified himself as

---

[*]     The Honorable J. Thomas Marten,    District Judge, United States District Court for the District of Kansas, sitting by designation.

[**]     After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist the determination of this appeal.   *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G).  The case is therefore ordered submitted without oral argument.

-2-

Jewish since approximately August 1995, and has litigated a prior case involving his faith in this court. *See Searles v. Van Bebber*, 251 F.3d 869 (10th Cir. 2001).

At some point prior to August 1, 1999, Searles was assigned to work in the food service area of the Facility. Searles objected to this assignment. He informed his unit team counselor and a prison chaplain that the kitchen was an unclean area for a Jewish person, particularly since there was no mikveh available for purification. [1] Because Searles refused to work in the kitchen, he received a disciplinary report and after a hearing was found guilty of a work performance violation.

In April 2000, Searles was again assigned to work in the kitchen. The Facility's Director of Religious Programs obtained an opinion from Rabbi Friedman in Kansas City, who served as a religious advisor for the Kansas Department of Corrections, that working in a non-Kosher kitchen did not violate the Jewish faith and that in any event, if an inmate was concerned about contamination, he could wear gloves. Rabbi Friedman also stated that a mikveh is only used for very special occasions such as conversion to the Jewish faith. Searles' continued protests that the assignment violated his religious beliefs fell

---

[1]     A mikveh is a purifying bath involving rainwater stored in a ceremonial fashion.

on deaf ears, and he was again written up for refusing to work. [2] A hearing officer again found Searles guilty of a work performance violation.

Searles' second conviction resulted in serious collateral consequences. Since this entailed a second downgrade in his prison incentive level rating to Level I within five years, he lost the right to possess property items. The prison collected his personal property from his cell and shipped it to his wife. Searles claims that the property items were sent to the wrong address and were lost. [3]

## JURISDICTION

Before turning to the merits of this appeal, we must first address a rather complex jurisdictional issue arising from what appears to be an untimely notice of appeal. On October 23, 2003, the district court entered its final order granting summary judgment for the defendants. R., Vol. II, doc. 103. On the same day, it entered a separate Fed. R. Civ. P. 58 judgment. *Id.* doc. 104. Under Fed. R. App. P. 4(a)(1)(A), Searles had thirty days to file a notice of appeal. Since the thirtieth

---

[2]     The warden did offer, "out of the kindness of my heart," to assist Searles in finding a different job at the Facility, but told him he was expected to continue in his present job in the kitchen until another one could be found. R., Vol. III, doc. 78 (*Martinez* report), ex. 10. When Searles nevertheless continued his refusal to work, the warden withdrew this offer and stated "[y]our refusal shall be met with appropriate action." *Id.*, ex. 12.

[3]     In the district court, Searles claimed that the Facility deliberately sent his property items to the wrong address. The defendants presented evidence that Searles was notified of the address to which the items would be shipped, and did not object. In any event, Searles does not raise a "loss of property" claim in this appeal.

day of this time period fell on a Saturday (November 22), he had until Monday, November 24, 2003, to file his notice of appeal. [4] (As Searles was incarcerated, he could have met this deadline for filing his notice of appeal by depositing the notice of appeal in the institution's internal mail system on or before the November 24 deadline. *See* Fed. R. App. P. 4(c)).

Alternatively, Searles could have extended the time for filing the notice of appeal by filing a motion to alter or amend the judgment or for a new trial, pursuant to Fed. R. Civ. P. 59(b), (e), or for relief from the judgment pursuant to Rule 60(b). Either motion would have extended the time for filing a notice of appeal until the motion was decided. *See* Fed. R. App. P. 4(a)(4)(A). It would only have had this effect, however, if the motion was itself timely. *See id.* (stating that "[i]f a party timely files" tolling motion, it extends time to file notice of appeal until entry of order disposing of such motion). Rule 59 requires that the motion be filed within ten days, and Fed. R. App. P. 4(a)(4)(A)(vi) requires the same of a Rule 60(b) motion if it is to toll the time for a notice of appeal. This ten-day time period does not include intermediate Saturdays, Sundays, or holidays. *See Parker v. Bd. of Public Utilities of Kan. City*, 77 F.3d 1289, 1290

---

[4] On October 27, 2003, the court clerk filed a purported amended judgment. R., Vol. II, doc. 105. This document, however, related to a different case and was stricken the same day. *See id.* doc. 106. There is no indication that Searles relied on this misfiled document in calculating the time period for appeal.

n.2 (10th Cir. 1996). Searles therefore had until November 6, 2003, to file a timely tolling motion.

On November 4, 2003, Searles mailed a letter to the district court, stating that "A Motion to Reconsider was mailed out of the Lansing Correctional Facility to be typed and has not yet reached its destination. This was placed in the U.S. mail in the Lancing [sic] Correctional Facility. I wish this letter to be entered in the Journal-Entry." R., Vol. II, doc. 107. The district court clerk filed this letter on November 5, 2003.

Searles' letter states no substantive grounds for relief, and cannot itself be construed as a Rule 59 or 60(b) motion. Indeed, the district court did not construe it in this way. [5] On November 17, 2003, Searles mailed his "motion to reconsider" to the court. *See* R., Vol. II, doc. 108. It was filed with the district court on November 18, 2003, well outside the ten-day period from the entry of

---

[5] The letter might, however, have been construed as a request for additional time to file a tolling motion. Even given such a construction, however, the letter would not have satisfied the tolling requirements of Fed. R. App. P. 4(a)(4). Under Fed. R. Civ. P. 6(b), the district court may not extend the time for a Rule 59 motion "except to the extent and under the conditions" stated in Rule 59. *See* Fed. R. Civ. P. 6(b). Both Rule 59(b) and 59(e) state that motions for relief *must* be filed "no later than 10 days after entry of the judgment." Since Rule 59 does not permit any extensions of time for filing the motion, the district court lacks the power to extend the time limits for filing a Rule 59 motion. *Weitz v. Lovelace Health Sys., Inc.*, 214 F.3d 1175, 1179 (10th Cir. 2000) (construing Rule 59(e)). Similarly, Fed. R. App. P. 4(a)(4)(vi) specifically requires that a Rule 60(b) motion be brought within ten days if it is to have a tolling effect.

summary judgment. The district court summarily denied the motion on November 19, 2003. *Id.* doc. 110.

Given the untimeliness of Searles' motion, the deadline for the notice of appeal from the summary judgment order remained fixed at November 24, 2003. The next action in the case occurred on November 26, 2003, two days after this deadline. Searles filed two documents: (1) a "Motion for Permission to Appeal," *id.* doc. 111, and (2) "Notice to Appeal," *id.* doc. 112. According to the certificate of mailing, each of these documents was placed in the United States mail the day before, November 25. Thus, even if Searles were given the benefit of the "mailbox rule" in Fed. R. App. P. 4(c), his notice of appeal was still a day late.

Searles' "Motion for Permission to Appeal" did not request an extension of time to file the notice of appeal. Nor did it state any grounds for an extension of time. It merely discussed the merits of the issues Searles wished to present on appeal, and concluded that the district court should grant Searles permission to do so. Since the motion did not expressly request additional time, we are doubtful whether it could be construed as a request for extension of time. *See Senjuro v. Murray*, 943 F.2d 36, 37 n.2 (10th Cir. 1991).

Nevertheless, the district court implicitly construed the motion for permission to appeal as a request for extension of time. The district court then

*denied* the motion as moot, reasoning that during the time it had been pending, Searles' motion for reconsideration had already tolled the time period for filing a notice of appeal. *See* R., Vol. II, doc. 114. As we have seen, however, the motion for reconsideration could not have had such a tolling effect, because it was itself untimely.

The issue now before us, therefore, is whether we can save Searles' summary judgment appeal by granting him an extension of time based on his "Motion for Permission to Appeal," rather than denying it as moot as the district court did. We hold that we cannot. While the motion itself is timely filed, *see* Fed. R. App. P. 4(b)(4), it utterly fails to satisfy the substantive prerequisites of the rule. It contains no showing of "excusable neglect" or "good cause" for Searles' failure to file a timely notice of appeal. *See id.* Had the district court granted the motion under these circumstances, it would have been a clear abuse of discretion. *See, e.g., United States v. Vogl*, 374 F.3d 976, 981 (10th Cir. 2004) (endorsing clear abuse of discretion standard in cases involving excusable neglect).

In short, Searles failed to show his entitlement to an extension of time. His notice of appeal from the summary judgment order was therefore untimely and did not confer jurisdiction on this court.

Searles also appealed, however, from the denial of his motion for reconsideration. His notice of appeal from that order was filed within thirty days of the order, and is therefore timely to appeal from that order. *See Weitz,* 214 F.3d at 1181. Since the motion to reconsider was filed outside the ten-day period, however, we construe it as a Rule 60(b) motion. *See id.* The only grounds for relief for such a motion possible here are those found in Rule 60(b)(6), which permits the district court to reverse its order for "any other reason justifying relief from the operation of the judgment."

"We review a district court's denial of a Rule 60(b) motion for an abuse of discretion." *Cummings v. General Motors Corp.*, 365 F.3d 944, 954 (10th Cir. 2004). "[S]uch relief is extraordinary and may only be granted in exceptional circumstances." *LaFleur v. Teen Help*, 342 F.3d 1145, 1153 (10th Cir. 2003) (quotations omitted). "A district court should grant relief from judgment under Rule 60(b)(6) only when it offends justice to deny such relief." *Middle Rio Grande Conservancy Dist. v. Norton*, 294 F.3d 1220, 1225 (10th Cir. 2002) (quotation omitted).

## ANALYSIS

In assessing Searles' claim that the defendants violated his right to free exercise of his religion, the district court properly applied the four-part test set

out in *Turner v. Safley*, 482 U.S. 78, 89-91 (1987). "[W]hen a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Id.* at 89. *Turner*'s reasonableness standard requires a court to examine:

> (1) whether a rational connection exists between the prison policy regulation and a legitimate governmental interest advanced as its justification; (2) whether alternative means of exercising the right are available notwithstanding the policy or regulation; (3) what effect accommodating the exercise of the right would have on guards, other prisoners, and prison resources generally; and (4) whether ready, easy-to-implement alternatives exist that would accommodate the prisoner's rights.

*Beerheide v. Suthers*, 286 F.3d 1179, 1185 (10th Cir. 2002).

As a threshold matter, a court must also determine whether the inmate's belief is "sincerely held" and "religious in nature." *Dehart v. Horn*, 227 F.3d 47, 51 (3d Cir. 2000) (en banc). The district court found this to be a difficult inquiry in this case, but ultimately concluded that Searles had demonstrated sufficient evidence of sincerity to survive summary judgment.[6] We agree.

---

[6] Searles' fear of contamination is triggered by both "aroma ingestion and contact with non-kosher food" in the prison kitchen. R., Vol. I, doc. 1 at 5. Defendants contend that avoiding the ingestion of non-kosher odors and the handling of non-kosher food is a "non-central religious practice" in the Jewish faith. Aplee Br. at 6. To the extent they contend that this belief is therefore somehow entitled to less protection than central or core tenets of Judaism, we must disagree. "It is not within the judicial ken to question the centrality of particular beliefs or practices to a faith, or the validity of particular litigants' interpretations of those creeds." *Hernandez v. Comm'r of Internal Revenue*, 490

(continued...)

While not sequentially analyzing the four *Turner* factors, the district court found them to weigh in favor of requiring Searles to work in the kitchen despite his concerns about non-kosher food handling and odors. *See* R., Vol. II, doc. 103, at 11-12.  The district court relied on the two penological interests advanced by defendants:  budgetary concerns, and the need for a nondiscriminatory and consistent prison staffing.  These appear to be legitimate penological interests. *See Beerheide*, 286 F.3d at 1186.

Searles argues (relying on what is at best hearsay evidence) that other inmates did not care if he was reassigned out of the kitchen due to his religious beliefs.  He also contends that the defendants' stated penological justifications are vague, that monetary concerns do not justify assigning him to the kitchen because

---

[6](...continued)
U.S. 680, 699 (1989).  Absent a showing that Searles does not sincerely hold his belief, we will not accord it less protection than other religious beliefs.  Searles has twice subjected himself to prison discipline to defend his beliefs about working in a non-kosher kitchen.  We note also that "kosher" covers a broad spectrum of interpretation. *See* Gerald F. Masoudi, Comment, *Kosher Food Regulation and the Religion Clauses of the First Amendment*, 60 U. Chi. L. Rev. 667, 691 (1993) ("[I]f a state defines 'kosher,' the state's definition can have no force when applied to one who has differing religious convictions about the meaning of the term. . . .  [N]o state may define 'kosher' according to the beliefs of any particular sect of Judaism.").  The concept that ingestion of non-kosher odors may somehow be contaminating is not so far-fetched as to be fanciful or unworthy of belief. *See* "Increase Your Sales...GO KOSHER!," http://gokosher.net/Requirements.htm (visited Oct. 27, 2004) ("[E]ven if all . . . residue [of non-kosher products] has been removed [from a cooking utensil], an aroma and taste variation . . . can remain in the equipment that can affect the subsequent Kosher product.").

-11-

he would have been paid more to work there than a lower-level inmate, and that the defendants should be required to incur some expense to accommodate his religious beliefs in any event. These arguments do not justify reversal, under our extremely limited standard of review, of the district court's denial of his motion for reconsideration. We therefore DISMISS this appeal, insofar as it seeks review of the district court's order of summary judgment, and AFFIRM the denial of Searles' motion for reconsideration, treated as a motion under Fed. R. Civ. P. 60(b).