FILED
United States Court of Appeals
Tenth Circuit

April 27, 2010

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

## UNITED STATES COURT OF APPEALS

### TENTH CIRCUIT

DEBRA VANDERWERF, individually
and as next friend for Riley
Vanderwerf and Tanner Vanderwerf,
minors; ESTATE OF WILLIAM K.
VANDERWERF,

        Plaintiffs - Appellants,

v.

SMITHKLINE BEECHAM
CORPORATION, d/b/a
Glaxosmithkline,

        Defendant - Appellee.

No. 08-3218

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. No. 2:05-CV-02271-KHV)**

---

Brian J. Madden (with Timothy L. Sifers and Derek H. Potts, The Potts Law Firm,
Kansas City, MO, on the briefs), Wagstaff & Cartmell LLP, Kansas City, MO, for
Plaintiffs - Appellants.

Andrew Bayman (with Chilton Davis Varner, Stephen B. Devereaux, Todd P.
Davis, and Jennifer C. Kane, King & Spalding, Atlanta, GA, and Thomas N.
Sterchi, and Elizabeth Raines, Baker Sterchi Cowden & Rice L.L.C., Kansas City,
MO, on the briefs), King & Spalding, Atlanta, GA, for Defendant - Appellee.

---

Before **HENRY**, Chief Judge, **BRISCOE** and **LUCERO**, Circuit Judges.

---

**HENRY**, Chief Judge.

_____

The plaintiffs, the Vanderwerf family and the estate of William K. Vanderwerf, appeal the district court's grant of summary judgment to SmithKline Beecham Corporation ("SKB"), the pharmaceutical company who manufactured paroxetine, under the label Paxil, a medication prescribed to the decedent, who later committed suicide. We are unable, however, to overlook the ill-timed filing of the Vanderwerfs' notice of appeal, because without a timely notice of appeal, we are deprived of jurisdiction to review the merits of the action. As a result of the plaintiffs' sua sponte withdrawal of their motion for reconsideration, their appeal is from an order entered seven months earlier. We must grant SKB's motion to dismiss this appeal as untimely filed.

## I. BACKGROUND

The Vanderwerfs suffered a tragic loss when their family's father, William, who suffered from clinical depression, committed suicide in 2003. The family brought suit seeking damages from SKB, the manufacturer of Paxil, which Mr. Vanderwerf had been prescribed to reduce his depression and anxiety. In various claims asserting strict liability, negligence and breach of implied warranty, the complaint alleged that SKB failed to warn or instruct about the risks of Paxil. The Vanderwerfs further alleged that SKB did not adequately warn Mr. Vanderwerf's treating physicians that Paxil increases the risk of suicidal behavior and/or suicide

2

precursors across all psychiatric disorders for adults of all ages. Under this theory, had the treating physicians received such warnings, they would have (1) not prescribed Paxil; (2) monitored Mr. Vanderwerf more closely; and/or (3) warned Mr. Vanderwerf and his family of the increased risk. The Vanderwerfs claimed that had any of these three events taken place, Mr. Vanderwerf would not have committed suicide.

SKB moved for summary judgment, arguing that (1) the court should exclude the testimony of the Vanderwerfs' proffered witness, Dr. Peter Breggin; (2) without an expert's testimony the Vanderwerfs cannot methodologically prove general or specific causation; and (3) the Vanderwerfs could not demonstrate proximate causation because, had SKB provided additional warnings to the treating physicians, the doctors would not have changed their course of treatment.

On January 9, 2008, the district court, in a thirty-one page order, granted summary judgment to SKB. The court first noted that because suicidality occurs in many people who are not exposed to Paxil or any other medicine, the plaintiffs needed to present expert testimony to meet their burden of proving medical causation that Paxil can cause suicide (general causation) and that Paxil more likely than not caused Mr. Vanderwerf's suicide (specific causation). The court excluded Dr. Breggin's testimony "[f]or substantially the reasons stated in [SKB's motion to exclude Dr. Breggin's testimony and its reply brief in support of that

3

motion]."[1]  Aplts' App. vol. XII, at 2354 (Dist. Ct. Order, filed Jan. 9, 2008).

As to general causation, the district court also found that (1) Dr. Breggin did not put forth an accepted methodology for determining general causation (i.e., that Paxil can cause suicide); (2) failed to account for the substantial body of evidence indicating no causal link between Paxil and suicide or suicidal behavior in adults, particularly those beyond the age of thirty; and (3) did not sufficiently distinguish statistical "association" from causation.  *Id.*

The court similarly concluded that because Dr. Breggin could not testify, the Vanderwerfs could not establish that Paxil more likely than not caused Mr. Vanderwerf's suicide (i.e., specific causation).  *Id.* at 2358.  The court stated that even given SKB expert Dr. John Kraus's testimony, any conclusion that Paxil more likely than not caused Mr. Vanderwerf's suicide "would be sheer speculation." *Id.*  Because  the Vanderwerfs offered no evidence of specific causation aside from the testimony of Dr. Breggin, the court sustained SKB's motion for summary judgment on this alternative ground.

Finally, the district court determined that even had the Vanderwerfs established general and specific causation, they could not establish proximate

---

[1]  While the district court apparently adopted wholesale SKB's arguments, we acknowledge that the district court also supplied its independent reasoning and a thorough analysis of the issues and arguments in its order.

4

causation. Under Kansas's learned intermediary doctrine,[2] the court first assumed

that SKB should have provided labeling and warnings that (1) Paxil increased the

risk of suicidal behavior and (2) Paxil increased the risk of suicide precursors such

as activation, overstimulation, anxiety, insomnia and agitation. Additionally, the

court assumed that Paxil could have provided a warning consisting of information

that SKB disclosed in 2006 in the DHCP letter that there existed a "possible

---

[2] Under Kansas's learned intermediary doctrine, "the manufacturer's duty to warn its customers is satisfied when the prescribing physician is made aware of the risks and dangers of the product, since the patient cannot obtain the medical product except through the physician." *Ralston v. Smith & Nephew Richards, Inc.*, 275 F.3d 965, 974 (10th Cir. 2001). Under this doctrine:

> Where a product is available only through the services of a physician, the physician acts as a learned intermediary between the manufacturer or seller and the patient. *It is his duty to inform himself of the qualities and characteristics of those products which he prescribes for or administers to or uses on his patients, and to exercise an independent judgment, taking into account his knowledge of the patient as well as the product.* The patient is expected to and, it can be presumed, does place primary reliance upon that judgment. . . . Thus, if the product is properly labeled and carries the necessary instructions and warnings to fully apprise the physician of the proper procedures for use and the dangers involved, *the manufacturer may reasonably assume that the physician will exercise the informed judgment thereby gained in conjunction with his own independent learning, in the best interest of the patient.* It has also been suggested that the rule is made necessary by the fact that it is ordinarily difficult for the manufacturer to communicate directly with the consumer.

*Id.* (quoting *Humes v. Clinton*, 792 P.2d 1032, 1039 (Kan. 1990) (quoting *Terhune v. A.H. Robins Co.*, 577 P.2d 975, 978 (Wash. 1978))).

5

increase in risk of suicidal behavior" in adults who took Paxil. Aplts' App. at 2345.

The court acknowledged the Vanderwerfs' argument that if there had been a warning that Paxil increased the risk of suicide in adults, Dr. John Crane, Mr. Vanderwerf's treating physician at the time of the suicide, would have passed along the additional warning and "watched [Mr.Vanderwerf] considerably closer." *Id.* at 2364. Dr. Crane testified that he might "not even have used [Paxil] in a certain individual," had he known of the risks involved. *Id.* But given the positive results Mr. Vanderwerf had shown while on Paxil, however, the court understood that the treating physicians would still prescribe Paxil for Mr. Vanderwerf. Thus, the court concluded that the argument that the treating physicians "may not have used [Paxil] in a certain individual" was speculative and did not raise a genuine issue of fact as to the prescription for Mr. Vanderwerf.

In granting summary judgment to SKB, the district court concluded that "[s]peculation about how this tragedy might have been avoided is absolutely understandable and perhaps inevitable, but [the Vanderwerfs] cannot escape summary judgment based on speculation." *Id.* at 2367.

On January 17, 2008, eight days after the district court granted summary judgment to SKB, the Vanderwerfs filed a Rule 59(e) Motion to Reconsider arguing that the district court incorrectly granted summary judgment based on the flawed determination that the Vanderwerfs had presented insufficient evidence of

6

general, specific and proximate causation. Despite the passage of about seven months, the district court did not act on the motion to reconsider. Counsel for the Vanderwerfs report they telephoned the district court judge's chambers and spoke to a law clerk on two occasions, each time inquiring into the status and likelihood of a ruling on the motion. But on August 8, 2008, counsel decided to file a notice of withdrawal of the Rule 59 motion, and also filed a Notice of Appeal. Unfortunately, the timing of this Notice of Appeal deprives this court of jurisdiction.

## II. DISCUSSION

The Vanderwerfs argue that their withdrawal of their Rule 59(e) motion and their filing of a notice of appeal satisfied the Federal Rules of Appellate Procedure's requirements. We disagree.

**The Vanderwerfs withdrawal of their Rule 59(e) motion and filing of a notice of appeal do not satisfy the Federal Rules of Appellate Procedure's requirements**

As Federal Rule of Appellate Procedure 3 notes, "[a]n appeal permitted by law as of right from a district court to a court of appeals may be taken *only* by filing a notice of appeal with the district clerk within the time allowed by Rule 4." (emphasis supplied). Rule 4 in turn provides that "the notice of appeal required by Rule 3 *must* be filed with the district clerk within 30 days after the judgment or order appealed from is entered." Fed. R. App. P. 4(a)(1)(A) (emphasis supplied)*; see* 28 U.S.C. § 2107(a) ("Except as otherwise provided in this section, no appeal

7

shall bring any judgment, order or decree in an action, suit or proceeding of a civil nature before a court of appeals for review *unless notice of appeal is filed, within thirty days after the entry of such judgment, order or decree*.") (emphasis supplied). We strictly construe statutes conferring jurisdiction. *United States v. Pethick*, 513 F.3d 1200, 1202 (10th Cir. 2008) ("Statutes conferring jurisdiction must be strictly construed.") (citing *United States ex rel. Precision Co. v. Koch Indus., Inc.*, 971 F.2d 548, 552 (10th Cir. 1992); *F & S Constr. Co. v. Jensen*, 337 F.2d 160, 161 (10th Cir. 1964)). Compliance with filing requirements "is mandatory and jurisdictional." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 203 (1988); *see Alva v. Teen Help*, 469 F.3d 946, 948 (10th Cir. 2006).

The Vanderwerfs failed to comply with the jurisdictional requirements of Rules 3, 4 and § 2107. Federal Rule of Appellate Procedure 4(a)(4)(A)(iv) provides that "[i]f a party timely files" a motion "to alter or amend the judgment under Rule 59" "the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." *See Warren v. Am. Bankers Ins. of Fla.*, 507 F.3d 1239, 1244-45 (10th Cir. 2007) ("[I]f a party timely files a Rule 59(e) motion, the time to file an appeal runs from the date the court enters the order disposing of the motion"). The timely filing of a Rule 59 motion thus suspends the thirty-day time clock for filing a notice of appeal, and the time to file an appeal runs from the time the district court enters an order disposing of the Rule 59 motion. *See Searles v. Dechant*, 393 F.3d 1126, 1129 (10th Cir. 2004)

8

(noting that a timely Rule 59 "motion would have extended the time for filing a notice of appeal until the motion was decided" and observing that "'[i]f a party timely files' [a] tolling motion, it extends [the] time to file notice of appeal until entry of order disposing of such motion") (quoting Fed. R. App. P. 4(a)(4)(A)); Fed. R. App. P. 4(a)(1) (Advisory Note: "The amendment is intended to alert readers to the fact that paragraph (a)(4) extends the time for filing an appeal when certain posttrial motions are filed. The Committee hopes that awareness of the provisions of paragraph (a)(4) will prevent the filing of a notice of appeal when a posttrial tolling motion is pending.").

Here, the Vanderwerfs' withdrawal of the Rule 59 motion on August 8, 2008, without the entry of an order by the district court left the January 9, 2008 order as the order being appealed. Because that order was seven months old, the time for filing a notice of appeal expired approximately six months before, in February 2008. Federal Rule of Appellate Procedure 4 requires entry of an "order disposing of [the Rule 59] motion" to give the appealing party the benefit of Rule 4(a)(4)(A)(iv). The Vanderwerfs' "withdrawal of their Rule 59 motion leaves the record as if they had never filed the motion in the first place." SKB's Motion to Dismiss Appeal at 6 (citing 56 Am. Jur. 2d Motions, Rules and Orders § 32 (2009) ("The effect of a withdrawal of a motion is to leave the record as it stood prior to filing as though the motion had never been made.")).

The Vanderwerfs' notice of appeal designated the January 9, 2008 judgment

9

granting summary judgment to SKB as the judgment being appealed: "[the Vanderwerfs] appeal . . . from the final judgment of the District Court for the District of Kansas, entered in this case on January 9, 2008." Notice of Appeal filed Aug. 8, 2008. The notice of appeal acknowledges that the Vanderwerfs "timely filed a Motion to Alter or Amend Judgment with Memorandum in Support and then withdrew this Motion on August 8, 2008, before the District Court ruled on it." *Id.* The Vanderwerfs argue that the filing, and subsequent withdrawal, of a Rule 59(e) motion tolled Federal Rule of Appellate Procedure 4(a)(1)(A)'s thirty-day filing period, such that they may appeal from the district court's grant of summary judgment, filed seven months earlier.[3]

The Vanderwerfs point to several circuit cases for support, but their arguments are unpersuasive. At oral argument, when asked for its strongest Tenth Circuit case, counsel for the Vanderwerfs pointed to *Oxy USA, Inc. v. Babbitt*, 230 F.3d 1178, 1183 n.5 (10th Cir. 2000), *vacated on other grounds*, 268 F.3d 1001 (10th Cir. 2001) (en banc). In *Oxy,* after the district court granted summary judgment to plaintiff, the plaintiff filed a motion to "clarify or correct" the judgment. The plaintiff then subsequently moved to withdraw the motion, and the district court judge *granted the motion* to withdraw and noted that the motion was

---

[3] The Vanderwerfs also seek to argue similar issues as those raised in the Rule 59(e) motion, arguing that the district court should not have excluded Dr. Breggin and that the court incorrectly determined that the Vanderwerfs had presented insufficient evidence of general, specific and proximate causation.

10

moot. 230 F.3d at 1183 n.5; *see* Aple's Reply in Support of its Motion to Dismiss Appeal, Ex. 2.[4] Within ten days of that ruling, the defendant timely appealed, and this court properly took jurisdiction. *Id.* We have no comparable district court ruling here.

The remaining cases relied upon by the Vanderwerfs similarly fail to convince us that the timing of their notice of appeal bestows jursidiction on this court. The cases primarily focus on when the thirty-day clock should be reset for purposes of determining the timeliness of a party's notice of appeal, and indicate that the proper indicator is the date of the filing of the order acknowledging the withdrawal of or denying the Rule 59 motion.

The Vanderwerfs' strongest case appears to be *United States v. Rodriguez*, 892 F.2d 233, 234 (2d Cir. 1989), where the government filed a Rule 59 motion, and then sent a letter withdrawing it. Eleven days later, the district court acknowledged the letter in a ruling stating "motion denied as withdrawn," which the Second Circuit construed as "a denial of the government's [Rule 59] motion." *Id.* The Second Circuit ruled that the withdrawn motion tolled the time limitation on bringing an appeal under Rule 4(b), but indicated it would not "decide whether the time period was tolled only until . . . the motion was withdrawn, or until . . .

---

[4] There was some dispute as to whether the motion was filed under Fed. R. Civ. P. 59(e) or 60(a). We found this to be a distinction without a difference. 230 F.3d at 1183 n.5.

11

the district court acknowledged that the motion was withdrawn and denied it on that basis." *Id.* at 236. Here, by contrast the Vanderwerfs' counsel did not wait until the district court had the opportunity to rule, and thus we have no order disposing of the Rule 59(e) motion to restart the clock. *See Brae Transp. v. Coopers & Lybrand*, 790 F.2d 1429, 1442 (9th Cir. 1986) (clarifying that the clock began ticking for the filing of the notice of appeal when the "order was issued disposing of the Rule 59 motion," not when the Rule 59 order was withdrawn).

The Vanderwerfs also point to the Sixth Circuit's brief unpublished disposition involving a variety of parties and claims in *Chrysler Motors Corp. v. County Chrysler, Inc.*, No. 89-1472, 1989 WL 1000094, at *1 (6th Cir. July 31, 1989),[5] where the party seeking to appeal after the withdrawal of a Rule 59 motion was allowed to do so. The case did not explain whether or not there was a separate ruling from the district court, merely noting that the pending motion was deemed "denied" as of the date of the withdrawal. The key distinguishing factor is that in *Chrysler* the parties seeking to appeal (the defendants-counterclaimants-third-party plaintiffs) were not in control of the litigation, because they did not file the post-trial motion. *See id.* Rather the quite distinct third-party defendant-

_____

[5] The Federal Rules of Appellate Procedure have been amended since *Chrysler Motors Corp.* The Advisory Committee Notes to Rule 4(a)(4)'s 1993 amendments explain that: "A notice [of appeal] filed before the filing of one of the specified motions [including a Rule 59(e) motion] . . . is, in effect, suspended until the motion is disposed of, whereupon, the previously filed notice effectively places jurisdiction in the court of appeals."

12

appellee filed the Rule 59 motion. Thus, the defendants-counterclaimants-third-party plaintiffs "were effectively prohibited from filing a notice of appeal" while the third-party defendant-appellee's motion was pending, and the motion was deemed "denied" as of the date of the withdrawal. *See id.* Here, by contrast, the Vanderwerfs were in control of the litigation and were solely responsible for ensuring that the deadlines were met.

Although we note that there is no suggestion that the Vanderwerfs acted in bad faith, we are hamstrung by the mandatory procedural rules. The Vanderwerfs had other options, which may have allowed this court to take jurisdiction. First, the Vanderwerfs could have filed a motion requesting a ruling. Second, they could have continued to wait for a ruling, or sought a writ of mandamus in this court, which, if granted would compel the district court to rule on the Rule 59 motion. Third, they might have filed a motion for an extension of time under Federal Rule of Appellate Procedure 4(a)(5)(A)(ii), provided that they might show good cause or excusable neglect underlying the untimely notice. Fourth, they might have filed a premature notice of appeal that would ripen into a timely notice of appeal when the district court finally ruled. S*ee Fields v. Okla. State Penitentiary*, 511 F.3d 1109, 1111 (10th Cir. 2007). Finally, it seems the best option may have been for the Vanderwerfs to have moved to withdraw the motion, in hopes that the district court would rule on that motion thereby triggering a 30-day period for the filing of a timely appeal. We conclude that none of the Vanderwerfs' cases help them

13

establish that their appeal was timely; we thus must dismiss this appeal.

## III.  CONCLUSION

We recognize the severity of today's holding, and empathize with the plight of parties who are effectively prohibited from filing a notice of appeal because of the inaction of a district court.  But we must rely upon the unambiguous standard we have consistently applied to the timeliness requirements of Rule 4.  Quite simply, "[t]he time to file an appeal in a civil case is tolled by the timely filing of a motion listed in Rule 4(a)(4)(A), and begins to run anew from the entry of the order disposing of the last such remaining motion."  16A Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Catherine T. Struve, Federal Practice & Procedure § 3950.4 (4th ed. 2008) (footnotes omitted).  The order from which the Vanderwerfs appeal was filed in January 2008, seven months earlier.  Because timely notice of appeal is mandatory and jurisdictional, we lack jursidiction to consider this appeal.  *See Browder*, 434 U.S. at 264.  Accordingly, we hold that the Vanderwerfs' untimely filing of the notice of appeal of the order granting summary judgment divested this court of jurisdiction, and we GRANT SKB's motion to dismiss and we DISMISS the appeal.

88-3218, <u>Vanderwerf v. SmithKline Beecham</u>

**LUCERO**, J., dissenting.

My colleagues in the majority conclude that we lack jurisdiction because the notice of appeal was untimely. Yet the plain language of Federal Rule of Appellate Procedure 4 provides that the thirty-day deadline for the Vanderwerfs to file their notice of appeal has not even begun to run. Thus I respectfully dissent.

As the majority notes, under the Federal Rules of Appellate Procedure, a party may appeal from a district court judgment by filing a notice of appeal within thirty days of the entry of the order or judgment. (Majority Op. 7 (citing Fed. R. App. P. 3, 4(1)(A)).) Our circuit treats the timely filing of a notice of appeal as "mandatory and jurisdictional." <u>Alva v. Teen Help</u>, 469 F.3d 946, 955 (10th Cir. 2006). Rule 4, however, tolls the thirty-day deadline under certain circumstances. If a party timely files a motion to alter or amend a judgment under Federal Rule of Civil Procedure 59(e), then "the [thirty-day deadline] to file an appeal runs for all parties from the entry of the order disposing of" that motion or any other motion that tolls the deadline under Rule 4. Fed. R. App. P. 4(a)(4)(A)(iv).

Summary judgment was entered for SmithKline Beecham ("SKB") on January 9, 2008. The Vanderwerfs filed a motion to alter or amend the judgment on January 17, 2008, well within the filing deadline under Rule 59(e). After the district court failed to rule on the motion for nearly seven months, the Vanderwerfs withdrew their motion and filed their notice of appeal on August 8,

2008. Any delay in this case was caused by the district court, not the Vanderwerfs.[1]

According to the majority, the filing of a Rule 59(e) motion did not toll the deadline to file a notice of appeal because the district court never ruled on the motion. (Majority Op. 9-10.) Thus, the Vanderwerfs had thirty days from the entry of summary judgment in favor of SKB to file their notice of appeal. Because they failed to do so, they did not file a timely notice of appeal.

Under the language of Rule 4, however, it is not a district court's order disposing of a Rule 59(e) motion that triggers tolling. Instead, the thirty-day filing deadline does not even begin to run until the district court files an order: "If a party timely files in the district court [a motion to alter or amend the judgment under Rule 59(e)], the time to file an appeal runs for all parties from the entry of the order disposing of" the Rule 59(e) motion. Fed. R. App. P. 4(a)(4)(A)(iv). By the plain language of the rule, the timely filing of the motion to alter or amend triggers tolling. Because the district court did not rule on the motion to alter or

---

[1] The majority suggests the Vanderwerfs should have filed a motion requesting a ruling on their Rule 59(e) motion, filed a motion requesting an extension of time under Fed. R. App. P. 4(a)(5)(A)(ii), or moved to withdraw their Rule 59(e) motion. (Majority Op. 13.) Given the district court's delay on their initial motion, however, we can hardly fault the Vanderwerfs for rejecting the idea of requesting relief from the very court that caused the delay they sought to relieve.

2

amend the judgment, the thirty-day filing deadline has not begun to run.[2]  It follows that the Vanderwerfs' notice cannot be rejected as untimely.

My reasoning is in accord with pertinent authorities.  My colleagues have not cited to any cases holding that a party's withdrawal of a Rule 59(e) motion somehow nullifies tolling under Rule 4 such that the thirty-day deadline runs from the entry of the original judgment.  Indeed, courts addressing similar issues have rejected the majority's interpretation.  In United States v. Rodriguez, 892 F.2d 233 (2d Cir. 1989), a party withdrew a Rule 59 motion, and the district court later ruled on the motion.  Id. at 235-36.  Although the Second Circuit declined to choose which date restarted the filing deadline, it rejected the argument that withdrawal of the motion prevented tolling of the thirty-day deadline.  Id. at 236.  Similarly, in Brae Transportation, Inc. v. Coopers & Lybrand, 790 F.2d 1439 (1986), the Ninth Circuit decided that a "Notice of Intent to Dismiss" did not nullify tolling that started when the party filed a Rule 59 motion.  Id. at 1442.  Instead, the thirty-day deadline began to run only when the district court issued an order disposing of the Rule 59 motion as withdrawn.  Id.

SKB makes two equitable arguments in favor of its proposal that the Rule 4 filing deadline should not be tolled unless or until the district court issues an order on the motion that triggers tolling.  First, it argues that it was unfairly forced to spend time and money briefing the Rule 59(e) motion, only for the Vanderwerfs to

---

[2] The record of the district court states that this case is closed, but no order closing the case has been entered by the assigned judge.

3

withdraw it unilaterally. Had the district court ruled on the motion and upheld its earlier decision, however, SKB would have expended exactly the same costs. Thus SKB's costs arose because the Vanderwerfs filed a motion, not because they withdrew it. Second, SKB argues that the rule proposed in this dissent would allow abuse: A party could file a motion to alter or amend the judgment in order to extend its time to file a notice of appeal, and then withdraw the motion and file the notice. These actions would artificially extend the filing deadline, drive up the other party's legal fees, and waste the district court's time. Such a scheme would fail, however, if the district court ruled on the underlying motion in a timely fashion, as we expect district courts will do. In this case, there is no accusation that the Vanderwerfs acted in bad faith. A better rule would sanction only those parties who seek to abuse the system, rather than punishing innocent parties who simply want what they deserve: their day in court.

For the foregoing reasons, I dissent. I would entertain the present appeal, or remand this case to allow the district court an opportunity to rule on the Vanderwerf's Rule 59(e) motion or enter an order approving withdrawal of the motion.