FILED
United States Court of Appeals
Tenth Circuit

April 6, 2011

Elisabeth A. Shumaker
Clerk of Court

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

COPAR PUMICE COMPANY, INC.,

Plaintiff - Appellee,

v.

ALLAN MORRIS; DAVIS YANTOS;
MARY UHL; DEBRA MCELROY, in
their individual capacities,

Defendants - Appellants.

No. 09-2296

---

**Appeal from the United States District Court
for the District of New Mexico
(D.C. No. 1:07-CV-00079-JB-ACT)**

---

Jerry A. Walz (Marco Serna, New Mexico General Services Dept., Risk Management
Division, with him on the briefs), Walz and Associates, Cedar Crest, New Mexico for the
Defendants-Appellants.

Joseph Edward Manges, Comeau, Maldegen, Templeman & Indall, LLP, Santa Fe, New
Mexico for the Plaintiff-Appellee.

---

Before **LUCERO**, **EBEL**, and **HARTZ**, Circuit Judges.

---

**LUCERO**, Circuit Judge.

New Mexico Environment Department ("NMED") inspectors Allan Morris and David Yantos seek to appeal the denial of qualified immunity in this 42 U.S.C. § 1983 suit brought by Copar Pumice Co. ("Copar").[1]  Morris and Yantos filed motions for summary judgment, which were denied based on the presence of disputed issues of material fact.  The case proceeded to trial, after which appellants moved for judgment as a matter of law under Fed. R. Civ. P. 50(b).  However, appellants subsequently and voluntarily withdrew their Rule 50(b) motion.  Because their Rule 50(b) motion was withdrawn, and because the district court's denial of summary judgment was based on factual rather than purely legal issues, Morris and Yantos have waived appellate review.  Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

**I**

On the afternoon of August 28, 2006, Morris and Yantos visited Copar's El Cajete Mine pumice screening plant to conduct an unannounced inspection.  Before arriving at the facility, Morris reviewed Copar's New Mexico Air Quality Control Act ("AQCA") permit.  Copar's permit required that various records be maintained on site, and stated that NMED "shall be given the right to enter the facility at all reasonable times to verify the terms and conditions of this permit."  It further required Copar to produce upon request "any records or information necessary to establish that the terms and conditions

---

[1] NMED Secretary Ron Curry was originally included in the district court's judgment inadvertently.  Following a limited remand, the district court corrected its judgment pursuant to Fed. R. Civ. P. 60(a) to remove the reference to Curry.  Accordingly, Curry is no longer involved in this appeal.

of this permit are being met." These permit conditions derive from AQCA itself, which grants an inspector, "upon presentation of his credentials," the "right of entry to, upon or through any premises on which an emission source is located or on which any records required to be maintained . . . are located," and states that inspectors "may at reasonable times . . . have access to and copy any records required to be established and maintained." N.M. Stat. § 74-2-13.

When the inspectors arrived, there were only two Copar employees at the plant: laborers Ismael and Elias Gomez. The mine foreman, Adrian Salazar, had left for the day for a dentist appointment. Morris and Yantos approached Ismael Gomez ("Gomez"). The parties provide distinctly differing accounts of the ensuing encounter.

According to Morris and Yantos, both inspectors showed Gomez their credentials and explained that they were there to inspect the facility. Morris requested access to plant records that were required under the permit, and Gomez answered that the records were maintained by Salazar and were kept in Salazar's truck. Morris then asked whether the records might be kept somewhere at the facility. Gomez pointed to a trailer and agreed to take the inspectors into the trailer to look. Once inside the trailer, Yantos noticed a pile of papers on a desk and asked Gomez whether he could look through them. Gomez responded affirmatively. Morris recognized some of the documents as records required under Copar's permit. He asked Gomez whether there was a photocopier on site and Gomez responded that there was not. Morris then asked Gomez whether he could take the documents. Gomez answered yes.

Despite this account, several witnesses, including Gomez himself, testified that Gomez did not speak or understand English other than a few simple words. According to Gomez, Morris and Yantos did not present their credentials, and although he did not understand what they were saying, Gomez assumed they were some type of inspectors based on their clothing and equipment. Gomez told Morris, in Spanish, that the supervisor was not on site. He then walked to a trailer to look for parts he needed to fix plant equipment. Morris and Yantos followed him into the trailer where they attempted to ask him about documents. Gomez did not understand what they were saying, and left the inspectors in the trailer after he found the parts he needed. He did not answer any questions posed by the inspectors and did not consent to any search or seizure.

Morris and Yantos took twenty-four pages of documents from the trailer. The papers were returned the following day. As a result of the inspection, NMED initiated enforcement proceedings against Copar.

Copar sued Morris, Yantos, and Curry under 42 U.S.C. § 1983, alleging that the search and seizure violated the company's rights under the Fourth and Fourteenth Amendments to the U.S. Constitution and two provisions of the New Mexico Constitution. Defendants filed two motions for summary judgment. The first argued that summary judgment was appropriate because Copar consented to the search by agreeing to the permit conditions and because Gomez provided consent. The second motion argued that defendants were entitled to qualified immunity because they were authorized to conduct a warrantless search and seizure under the pervasively regulated business

-4-

exception to the warrant requirement, the law in this field was not clearly established, and reliance on the statute constituted extraordinary circumstances that prevented them from knowing their actions were unconstitutional.

The district court denied the first motion because "there is a genuine issue of material fact whether the NMED inspectors' search went beyond the consent that the permit provided, and because there is a genuine dispute of material fact whether Ismael Gomez consented." It denied the motion for qualified immunity because "there are genuine issues of material fact regarding whether the Defendants complied with the relevant statutes and permit, and thus whether Defendants' actions violated Plaintiff's constitutional rights." Defendants did not file an interlocutory appeal of the denial of qualified immunity.

The case proceeded to a jury trial on Copar's Fourth Amendment claim. At the close of Copar's case, defendants verbally renewed their qualified immunity argument pursuant to Fed. R. Civ. P. 50(a). That motion was denied.

The jury was instructed that consent is an exception to the warrant requirement. It was also instructed that Morris and Yantos did not need a warrant to "have access to and copy records" provided that they appeared at the Copar facility at a reasonable time and first presented their credentials. The instructions explained that if the "investigation exceeded the foregoing scope, then you must find the excessive investigation was in violation of Copar Pumice's Fourth Amendment rights, unless Copar Pumice consented to the investigation." Morris and Yantos did not object to this instruction. The jury

found that defendants violated Copar's rights, but awarded only one dollar in nominal damages.

Copar's claim for injunctive and declaratory relief, and its claim under the New Mexico Constitution, were subject to a bench trial. At the close of the bench trial, defendants' counsel stated, "I don't even know if it's worthy of the Court's time to put this in writing, but I just want you to maintain our motion for—at this point it would be judgment notwithstanding the verdict or whatever standard it is now, as to Count 1." On October 20, 2009, defendants filed a written motion for judgment as a matter of law pursuant to Fed. R. Civ. P. 50(b), arguing that a reasonable jury would be compelled to find that Gomez had apparent authority to consent to the search. They did not assert in that motion that they were entitled to qualified immunity or that Gomez's consent was unnecessary under the pervasively regulated business exception to the warrant requirement.

On October 23, 2009, the district court entered written findings of fact and conclusions of law. It held that defendants violated Copar's state constitutional rights and awarded Copar $16,218, but declined to enter declaratory or injunctive relief. The court entered final judgment on October 27, 2009.

Defendants filed a notice of appeal on November 23, 2009—before the district court ruled on their Rule 50(b) motion. At a district court hearing held subsequent to the filing of defendants' notice of appeal, and after Copar submitted its answer brief in this court, defendants withdrew their Rule 50(b) motion. At the same hearing, the district

court indicated it was inclined to grant a Rule 60(a) motion to correct a clerical error in the judgment if this court remanded to allow the correction. The court asked defendants if they still wanted to withdraw their motion given that a remand was likely, and defendants answered affirmatively. We later entered an order pursuant to Fed. R. App. P. 12.1 granting a limited remand to allow the district court to correct the judgment, but retaining jurisdiction over the appeal in this court. The district court corrected its inadvertent inclusion of NMED Secretary Ron Curry in its judgment.

## II

Before we proceed to the merits, we must independently consider our appellate jurisdiction. See United States v. Gonzales, 531 F.3d 1198, 1200 (10th Cir. 2008). As discussed supra, defendants filed a notice of appeal after judgment was entered but before the district court ruled on their Rule 50(b) motion. They filed a "Notice of Withdrawal" of that motion after briefing in this court was underway. The district court never entered an order formally denying defendants' Rule 50(b) motion.

When Fed. R. App. P. 4, setting forth the time to file an appeal, was amended in 1993, the advisory committee expressed "hope[] that awareness of the provisions of paragraph (a)(4) will prevent the filing of a notice of appeal when a posttrial tolling motion is pending." Fed. R. App. P. 4(a)(1) advisory committee's note (1993 Amendment). That hope has not been realized. We have repeatedly encountered jurisdictional conundrums caused by such filings. And the withdrawal of post-judgment motions may trap unwary litigants in this circuit.

In Vanderwerf v. SmithKline Beecham Corp., 603 F.3d 842 (10th Cir. 2010), plaintiffs filed a Fed. R. Civ. P. 59 motion eight days after the district court granted summary judgment in favor of the defendant. Vanderwerf, 603 F.3d at 845. Plaintiffs did not file a notice of appeal, relying on Fed. R. App. P. 4(a)(4)(A)(iv), which tolls the time to file a notice of appeal until "entry of the order disposing of" a Rule 59 motion. After seven months of inaction by the district court, plaintiffs filed a notice of withdrawal of the Rule 59 motion, and a notice of appeal. Vanderwerf, 603 F.3d at 845. This court held that the notice of withdrawal was not an "order disposing of" the Rule 59 motion. Id. at 846. Instead, we concluded that the "effect of a withdrawal of a motion is to leave the record as it stood prior to filing as though the motion had never been made." Id. (quotation omitted). Accordingly, we ignored the filing of the Rule 59 motion for purposes of Fed. R. App. P. 4, held that the notice of appeal was filed more than six months beyond the applicable deadline, and dismissed the appeal for lack of jurisdiction. Vanderwerf, 603 F.3d at 848.

This case presents a different situation from that encountered in Vanderwerf. Although appellants in this case similarly withdrew a pending post-judgment motion, they did so after filing an otherwise timely notice of appeal. Accordingly, appellants have no need to rely on the tolling effect of a post-judgment motion under Fed. R. App. P. 4(a)(4)(A).

But the timing of appellants' notice of appeal arguably implicates another provision of Rule 4, which provides: "If a party files a notice of appeal after the court

announces or enters a judgment—but before it disposes of any motion listed in Rule 4(a)(4)(A)—the notice becomes effective to appeal a judgment or order, in whole or in part, when the order disposing of the last such remaining motion is entered." Fed. R. App. P. 4(a)(4)(B). The notice of appeal in this case facially satisfies each of these conditions. It was filed after the district court entered judgment but before the court disposed of a pending Rule 50(b) motion. See Fed. R. App. P. 4(a)(4)(A)(i) (listing Fed. R. Civ. P. 50(b) motion). According to the plain text of the rule, appellants' notice of appeal would not become "effective to appeal a judgment or order, in whole or in part" until the district court entered an "order disposing of the" Rule 50(b) motion. Fed. R. App. P. 4(a)(4)(B)(i). Yet, as we held in Vanderwerf, a notice of withdrawal is not an order disposing of a motion. See 603 F.3d at 846. We thus have some doubt as to whether the appellants' notice of appeal ever became effective.

Although Vanderwerf's holding draws our appellate jurisdiction into question, it also answers our doubts. Because a withdrawn motion is treated "as though the motion had never been made" for purposes of Rule 4, Vanderwerf, 603 F.3d at 846, appellants' withdrawal of their Rule 50(b) motion renders Rule 4(a)(4)(B) inapplicable. We must ignore the Rule 50(b) motion, which means Morris and Yantos' notice of appeal is deemed not to have been filed while a post-judgment motion was pending. Instead, the time to file a notice of appeal in this case is governed by Fed. R. App. P. 4(a)(1). And because appellants complied with the thirty-day time limit in that subsection, see Fed. R. App. P. 4(a)(1)(A), we possess jurisdiction over their appeal.

-9-

**III**

Although we have jurisdiction, we conclude that appellants have waived review of their claims. Appellants frame their appeal as challenging the district court's denial of a motion for judgment as a matter of law. But the district court did not deny their Rule 50(b) motion; appellants voluntarily withdrew it. They have therefore waived review of their Rule 50(b) motion. See Mack v. McCune, 551 F.2d 251, 253 (10th Cir. 1977) (voluntary withdrawal of a motion waives appellate review); cf. Vanderwerf, 603 F.3d at 846 (withdrawn motion treated as though it was never made). Moreover, although the district court did deny appellants' Rule 50(a) motion, "the precise subject matter of a party's Rule 50(a) motion—namely, its entitlement to judgment as a matter of law— cannot be appealed unless that motion is renewed pursuant to Rule 50(b)." Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 404 (2006).

In response to Copar's waiver argument, appellants contend that they preserved review of their qualified immunity claim by filing motions for summary judgment. They rely on our precedent distinguishing between summary judgment denials based on abstract legal issues and those based on factual disputes. "[T]he denial of summary judgment based on factual disputes is not properly reviewable on an appeal from a final judgment entered after trial." Haberman v. Hartford Ins. Group, 443 F.3d 1257, 1264 (10th Cir. 2006) (citation omitted); see also Wiles v. Michelin N. Am., Inc., 173 F.3d 1297, 1301 (10th Cir. 1999) (same); Wolfgang v. Mid-Am. Motorsports, 111 F.3d 1515, 1521 (10th Cir. 1997) (same). "However, when the material facts are not in dispute and

the denial of summary judgment is based on the interpretation of a purely legal question, such a decision is appealable after final judgment." Haberman, 443 F.3d at 1264.

The Supreme Court recently considered this precise issue. In Ortiz v. Jordan, 131 S. Ct. 884 (2011), defendants in a 42 U.S.C. § 1983 suit unsuccessfully moved for summary judgment based on qualified immunity. 131 S. Ct. at 890. They did not seek interlocutory review of that denial. Id. The case proceeded to trial, and although defendants moved for judgment as a matter of law under Rule 50(a), they failed to renew that motion at the close of all evidence pursuant to Rule 50(b). Ortiz, 131 S. Ct. at 890-91. The Court "granted certiorari to resolve the conflict among the Circuits as to whether a party may appeal a denial of summary judgment after a district court has conducted a full trial on the merits." Id. at 891.

Some language in Ortiz appears to undermine Haberman. As to direct review of the denial of summary judgment, the Court noted that "the time to seek that review expired well in advance of trial." Ortiz, 131 S. Ct. at 891. The Court further cited its repeated holdings that "an appellate court is powerless to review the sufficiency of the evidence after trial" absent a Rule 50(b) motion. Ortiz, 131 S. Ct. at 892 (quotation and citations omitted). But the Court stopped short of announcing a categorical rule. Acknowledging defendants' contention that a motion for summary judgment preserves a legal issue even without a Rule 50(b) motion, the Court stated: "We need not address this argument, for the officials' claims of qualified immunity hardly present purely legal issues." Ortiz, 131 S. Ct. at 892 (quotation omitted).

-11-

The same is true here. Appellants attempt to characterize their summary judgment motions as raising pure issues of law. But we have previously cautioned that "prudent counsel will not rely on their own interpretations of whether an issue is purely a question of law or fact." Wolfgang, 111 F.3d at 1521. The district court was abundantly clear that it was denying appellants' qualified immunity motion for summary judgment because "there are genuine issues of material fact regarding whether the Defendants complied with the relevant statutes and permit." The district court similarly denied appellants' other motion for summary judgment because "there is a genuine issue of material fact whether the NMED inspectors' search went beyond the consent that the permit provided, and because there is a genuine dispute of material fact whether Ismael Gomez consented."

The issue decided by the jury was not whether AQCA or Copar's permit conditions allowed a warrantless search. Copar conceded during summary judgment briefing that ACQA was a constitutionally adequate substitute for a warrant as long as Morris and Yantos complied with the statute. And the jury was instructed, without objection by appellants, that "excessive investigation" beyond the scope of the statutory authorization would render Morris and Yantos liable absent consent. By returning a verdict in favor of Copar, the jury necessarily found that Morris and Yantos did not comply with ACQA and did not otherwise obtain consent. These are "factual disputes," not "purely legal question[s]." Haberman, 443 F.3d at 1264.

Because Morris and Yantos were denied qualified immunity based on factual

-12-

rather than legal issues, we may not review that denial absent a Rule 50(b) motion. "Failure to renew a summary judgment argument—when denial was based on factual disputes—in a motion for judgment as a matter of law . . . at the close of all the evidence is considered a waiver of the issue on appeal." Wolfgang, 111 F.3d at 1521 (citation omitted). And because appellants withdrew their Rule 50(b) motion, we have no occasion to consider the propriety of the district court's decision. See Mack, 551 F.2d at 253.

## IV

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.