**UNITED STATES of America, Appellee,**

v.

**Fernando RODRIGUEZ, Defendant–Appellant.**

**No. 345, Docket 89–1313.**

United States Court of Appeals, Second Circuit.

Argued Nov. 14, 1989.

Decided Dec. 26, 1989.

Jo Ann Harris, New York City, for defendant-appellant.

Peter K. Vigeland, New York City, Asst. U.S. Atty. for the S.D.N.Y. (Benito Romano, U.S. Atty. for the S.D.N.Y., Kerri Mar-

tin Bartlett, Asst. U.S. Atty., of counsel), for appellee.

Before LUMBARD, FEINBERG and MESKILL, Circuit Judges.

FEINBERG, Circuit Judge:

Defendant Fernando Rodriguez appeals from a judgment of conviction, dated June 15, 1989 in the United States District Court for the Southern District of New York, Thomas P. Griesa, J. Rodriguez pled guilty to possession of cocaine with intent to distribute in violation of 21 U.S.C. § 841, and was sentenced to ten years in prison. Rodriguez appeals, contending, among other things, that the government's notice of appeal in an earlier phase of this case was untimely. According to Rodriguez, this prevented the district court from imposing the sentence he now claims is a nullity. We affirm.

## Background

To understand Rodriguez's argument on appeal, it is necessary to know the timing of certain events in the district court. Thus, we spell out in detail the complicated procedural history of this case.

Following his arrest, Rodriguez engaged in plea negotiations with the government. Rodriguez's offense occurred in April 1988, well after November 1, 1987, the effective date of the new Sentencing Guidelines under the Sentencing Reform Act of 1984, which we shall refer to collectively as "the new law." The district judge, however, had held the Sentencing Guidelines unconstitutional, and it became clear that he intended to sentence Rodriguez under the statutes in effect prior to the new law, which we shall call "the old law."

A key difference between the old law and the new law concerned the rate at which a prisoner can earn "good time," i.e., credit against the length of the sentence by good conduct. Under the old law, a person serving a 10-year sentence could earn good time at the rate of 10 days a month, or 120 days a year, for a total of 1,200 days over 10 years. Under the new law, see 18 U.S.C. § 3624(b), a prisoner could earn no good time until after he had served a year, and could earn no more than 54 days of good time a year, for a total of 486 days over 10 years.

This disparity was obviously significant for Rodriguez. Before he formally pled guilty, he moved in the district court for a ruling that he would be sentenced under the good time provisions of the old law. The basis of the motion was that the Sentencing Guidelines, which the judge had already held unconstitutional, were not severable from other provisions of the Sentencing Reform Act, including the new, restrictive good time provisions. The government opposed this position, and asked the judge to rule that the good time provisions of the new law applied even if he declined to sentence Rodriguez under the Sentencing Guidelines.

In a written opinion, dated October 11, 1988, the judge held that the Sentencing Guidelines and the good time provisions of the Sentencing Reform Act were non-severable and that Rodriguez would be sentenced "in all respects" under the old law. Thereafter, on October 26, 1988, Rodriguez pled guilty to possession, with intent to distribute, of 14 kilograms of cocaine the preceding April. On January 10, 1989, the judge sentenced Rodriguez to ten years in prison, which was the minimum mandatory sentence under the old law for the offense. The judgment of conviction was actually entered in the criminal docket on January 13, 1989, and we shall refer to the judgment hereafter by that date.

On January 18, 1989, the United States Supreme Court decided *Mistretta v. United States*, —— U.S. ——, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989), which held the Sentencing Guidelines constitutional. Shortly thereafter, on February 9, 1989, the government moved in the district court for reconsideration of Rodriguez's sentence under the old law in light of *Mistretta*.

On March 6, 1989, however—before the district court had ruled on the government's motion for reconsideration—the government sent a letter to the district court withdrawing the motion. The government stated that it had "upon re-

view, determined that the better course is to appeal the sentence and obtain a remand." It asked the district court, under Federal Rule of Appellate Procedure (FRAP) 4(b), to extend its time for appeal, presumably under the provision that allows an extension for a period "not to exceed 30 days," upon a showing of "excusable neglect."

The district court granted the motion and extended the time to appeal to March 15, 1989. On the same day, it endorsed the government's motion for reconsideration with the words "[m]otion denied as withdrawn. So ordered." Also on the same day, the government filed its notice of appeal.

In April 1989, while its appeal was pending, the government moved in this court for remand to the district court for resentencing under the new law in light of *Mistretta*. We granted the motion on consent in May 1988. After remand, on June 15, 1989, the district court resentenced Rodriguez, this time under the new law, and again sentenced him to ten years in prison. It also made clear that the restrictive good time provisions of the new law should apply. This appeal followed.

### Discussion

Rodriguez raises several contentions on appeal, only one of which merits full discussion. He points out that the government's March 15, 1989 notice of appeal from the district court's first sentence, i.e., under the old law, was filed 61 days after entry of the judgment of conviction in the criminal docket of the district court on January 13, 1989. Because FRAP 4(b) only authorizes a district court to extend the government's time for appeal to a total of 60 days after the judgment of conviction is entered "in the criminal docket," Rodriguez argues that the government's notice of appeal was untimely. Thus, he contends that this court had no power to remand for resentencing, and that the district court could not impose a second sentence on June 15, 1989 under the new law, including the new law's restrictive good time provisions. Accordingly, appellant argues, the June 15,

1989 sentence is a nullity and the January 13, 1989 sentence under the old law remains in effect.

■ The key issue in appellant's argument is whether the government's March 15, 1989 notice of appeal from the January 13 sentence was timely. We believe that it was. The FRAP 4(b) clock stops when a party files a motion for reconsideration; that is, a timely motion for reconsideration renders the judgment non-final for appeal purposes, *United States v. Dieter*, 429 U.S. 6, 8, 97 S.Ct. 18, 19, 50 L.Ed.2d 8 (1976) (per curiam), and thus tolls the time for appeal under FRAP 4(b). See *United States v. Lefler*, 880 F.2d 233, 235 (9th Cir.1989). Once the district court denies the motion, the clock is reset to zero, and the full time for appeal "begins to run anew from the date of the entry of the order disposing of the motion." 9 Moore's Federal Practice ¶ 204.17, at 4–137 (2d ed. 1989) (footnote omitted). "Accordingly, the government has thirty days from the denial of its motion for reconsideration to file a notice of appeal." *United States v. Shaffer*, 789 F.2d 682, 686 n. 3 (9th Cir.1986).

It is conceded that the government had at least 30 days to appeal from the January 13, 1989 judgment of conviction. Within that period—on February 9, 1989—the government moved for reconsideration. Under the cases just cited, this stopped the running of the time period clock. On March 15, the district court endorsed the motion for reconsideration of the January 13 sentence with the words "[m]otion denied as withdrawn." It seems reasonable to construe this as a denial of the government's motion. Under *Dieter*, the finality of the judgment was thus suspended until March 15. See *Dieter*, 429 U.S. at 8, 97 S.Ct. at 19. The full 30–day clock started running again on March 15, and the government's notice of appeal filed the same day was obviously timely.

However, the government candidly concedes that it withdrew its motion for reconsideration in its letter of March 6, before the district court had ruled, and does not make the argument set forth above. It claims instead that if a motion for reconsid-

eration that is ultimately denied stops the running of the FRAP 4(b) appeal period until the motion is decided, a motion that is ultimately withdrawn has the same effect—at least until the day it is withdrawn.

The question whether a withdrawn motion for reconsideration tolls the time for appeal under FRAP 4(b) seems to be one of first impression. The government does not cite us to any case in which this court—or, indeed, any court—has considered the issue. Nor has our research revealed any such decision.

Nevertheless, we agree with the government that the filing of the motion for reconsideration stayed the running of the time for appeal under FRAP 4(b), even though the motion was withdrawn on March 6. We need not decide whether the time period was tolled only until March 6, when the motion was withdrawn, or until March 15, when the district court acknowledged that the motion was withdrawn and denied it on that basis; in either event, the subsequent notice of appeal was timely, because it was filed within 30 days of either of these two dates as required by FRAP 4(b).

The government's argument seems sound, at least in the absence of evidence that the government filed and then withdrew its motion for reconsideration in bad faith, as part of some sort of hardball litigation strategy, or that the government was guilty of neglect. If that were the case, we might well rule differently. But here, the government was understandably unsure how to proceed after the Supreme Court's decision in *Mistretta* upholding the Guidelines. Although the government initially decided to move in the district court for reconsideration of Rodriguez's sentence, the Justice Department later advised that the government should instead proceed via appeal. As the district court put it, "all that was involved here was a consideration of what is the appropriate procedural path to take. I mean, they were not sitting around with the . . . thing lying in a drawer being neglected."

We note also that at least two other reported decisions have concluded that withdrawn motions in analogous situations toll the time for appeal. See *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1442 (9th Cir.1986) (FRAP 4(a)(4) appeal period tolled by timely motion to vacate or stay judgment under FRCP 59, even though motion withdrawn before district court ruled on the motion); *United States v. McGrath*, 613 F.2d 361, 366 (2d Cir.1979) (notice of appeal that is withdrawn still tolls time period under Speedy Trial Act), *cert. denied sub nom. Buckle v. United States*, 446 U.S. 967, 100 S.Ct. 2946, 64 L.Ed.2d 827 (1980).

Thus, we conclude that a timely motion staying the finality of a judgment will toll the period for appeal at least until the motion is withdrawn, and probably until the district court takes some official action to acknowledge the withdrawal of the motion. Accordingly, the government's March 15, 1989 notice of appeal was timely, and the district court properly resentenced Rodriguez under the new law, including the new good time provisions.

 Rodriguez also argues that the resentence, which exposed him to harsher good time provisions, was invalid because it subjected him to double jeopardy and violated the doctrine of separation of powers. We do not agree. Rodriguez's double jeopardy argument is foreclosed by *United States v. DiFrancesco*, 449 U.S. 117, 136, 101 S.Ct. 426, 437, 66 L.Ed.2d 328 (1980). The separation of powers argument is similarly without merit. The judge did not direct the executive branch (the Bureau of Prisons) to determine good time in a particular way—the Sentencing Reform Act does that. The judge merely ruled, correctly, that the new law applies to the sentence.

Judgment affirmed.