**BELINDA R. NADEAU**, Plaintiff–Appellee, v. **ALBERT R. NADEAU**, Defendant–Appellant

NO. 15891

(FC–D NO. 87–4183)

NOVEMBER 5, 1993

BURNS, C.J., HEEN, AND WATANABE, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Plaintiff Belinda R. Nadeau (Mother) and defendant Albert R. Nadeau (Father) were married on November 9, 1985. Both are enlisted members of the United States Navy. Their son (Son), Janeau Rosaire Nadeau, was born on January 6, 1987. Father and Mother were divorced by the Family Court's May 19, 1989 Decree Granting Absolute Divorce and Awarding Child Custody (May 19, 1989 Divorce Decree).

Father appeals the family court's December 10, 1991 Order After Order or Decree (December 10, 1991 Order) that denied his July 5, 1991 amended motion seeking joint legal and sole physical custody of Son and modified Father's previously awarded visitation privileges. We affirm the December 10, 1991 Order's denial of Father's July 5, 1991 amended motion. We reverse that part of the December 10, 1991 Order that reduced Father's visitation privileges. In all other respects, we affirm.

## FACTS

Mother filed a Complaint for Divorce on December 17, 1987. The May 19, 1989 Divorce Decree awarded Mother legal and physical custody of Son and awarded Father Wednesday overnight and alternate weekend visitation. It ordered Father to pay child support of $170 per month. The May 19, 1989 Divorce Decree also stated as follows:

(e) While the parties are living in the same geographical area, each party may remove said child for his/her thirty (30) days annual leave;

(f) Should the parties live too far apart for [Father] to receive the above–ordered visitation, [Father] shall be entitled to visitation for two and one–half (2 1/2) months out of the summer and alternate Spring and Christmas vacations, plus whatever leave time he can spend in [Mother's] geographical area. The parties shall divide the cost of transportation.

Father's June 18, 1991 motion sought joint legal custody of Son and a modification of visitation. His July 5, 1991 amended motion sought joint legal and sole physical custody of Son. He stated his reason as follows:

3. The facts upon which this application for relief is made are as follows: The parties['] minor child who is four (4) years old has an emotional attachment to [Father's] five (5) year old son. The children are half–brothers and have socialized with each other since March of 1990. [Father] believes that the children should remain together in the same household and if they are separated when [Mother] or [Father] leaves the state due to military orders, this would have a detrimental effect on both children. [Father] does not want to

disrupt the bond that the children have established with each other when he transfers to the mainland in October, 1991. Currently, the children are seeing each other on a weekly basis and to break them up would not be in their best interest.

On June 21, 1991, Mother filed her motion seeking (1) a modification of Father's visitation privileges because Father was moving to the continental United States and (2) an increase of child support to $470 per month in accord with the applicable child support guidelines.

On September 17, 1991, the family court's officer filed a Social Study recommending the award of sole legal and physical custody of Son to Mother and, when Father and Mother move to the mainland, that Father be awarded "Type B" visitations as specified in the Guidelines for Visitation Schedules (GFVS) as published in the Hawai'i Divorce Manual, Fourth Edition.

The family court's December 10, 1991 Order denied Father's July 5, 1991 amended motion. It also modified Father's visitation privileges in relevant part as follows:

2. After the parties move to the [continental United States], visitation shall be as follows:

Visitation shall include but not be limited to: up to one (1) telephone call per day at reasonable hours made at [Father's] expense, and unlimited correspondence; Christmas vacation in even–numbered years (i.e. 1992), with the child to be returned at least two (2) days prior to the date school begins; and six (6) weeks during the summer vacation commencing no sooner than one (1) week after school is dismissed with the child to be return[ed] no later than one (1) week before school

commences. [Mother] and [Father] shall each pay
and be responsible for one–half (1/2) of the child's
transportation costs for said visitations. [Father]
shall give [Mother] at least two (2) weeks written
notice of his intention to exercise said visitations
and of the dates, times, etc. for said visitations.

If [Father] is in the area of the child's resi-
dence, visitation will be allowed. [Father] must
give one (1) week's notice prior to the visit; and
said visit should take into account the child's daily
school routine and important events.

\* \* \*

The family court entered Findings of Fact (FOF) and
Conclusions of Law (COL) on February 7, 1992. Father
appeals the December 10, 1991 Order.

## DISCUSSION

### 1.

Based on the record, we conclude that the December
10, 1991 Order decided only Father's July 5, 1991
amended motion and that the family court did not hear or
decide Mother's June 21, 1991 motion seeking a change of
Father's (1) visitation privileges and (2) obligation to pay
child support. The October 29, 1991 Stipulation/Order to
Set Trial listed the issues as follows: custody, visitation,
legal custody. It is highly unlikely that the visitation issue
emanated from Mother's June 21, 1991 motion because
nothing was said about child support. The December 10,
1991 Order confirms that the visitation issue did not
emanate from Mother's June 21, 1991 motion. It states
that the November 14, 1991 trial was held pursuant to
Father's June 18, 1991 motion and July 5, 1991 amended

motion. It does not mention Mother's June 21, 1991 motion or say anything about child support.

## 2.

The family court orally ruled on November 21, 1991. The December 10, 1991 Order was the written order. Father filed his Hawai'i Family Court Rules (HFCR) Rule 59(g) motion for reconsideration on December 3, 1991. This motion tolled the time for appeal. Hawai'i Rules of Appellate Procedure Rule 4(a)(4). On December 16, 1991, the family court orally granted Father's oral motion to withdraw his December 3, 1991 motion for reconsideration. The written order was entered on December 20, 1991. Father filed a notice of appeal on January 21, 1992.

It can be argued that, when Father withdrew his HFCR Rule 59(g) motion for reconsideration, the motion was void *ab initio* and therefore did not have any tolling effect. We do not agree with that argument. We conclude that the motion's tolling effect continued until the family court's December 20, 1991 order granted Father's motion to withdraw it. Our decision is based on the facts that the HFCR Rule 59(g) motion could not be withdrawn without the family court's approval and jurisdictional matters require certainty. Our decision is in accord with *United States v. Rodriguez*, 892 F.2d 233, 236 (2d Cir. 1989), *cert. denied*, 494 U.S. 1070, 110 S. Ct. 1791, 108 L. Ed. 2d 792 (1990), and *Brae Transp. v. Coopers & Lybrand,* 790 F.2d 1439 (9th Cir. 1986). Unlike *Rodriguez*, however, we conclude that situations where HFCR Rule 59(g) tolling motions are filed in bad faith should be dealt with by the imposition of appropriate sanctions.

## 3.

Father filed his Notice of Appeal on January 21, 1992. On February 3, 1992, one day past the time allowed by

Hawai'i Rules of Appellate Procedure Rule 10(b)(1), Father requested the transcript relevant to this appeal. The record on appeal was docketed in the supreme court on March 2, 1992, prior to the completion of the transcript. The transcript was filed in the family court on April 20, 1992. Since Father did not move to supplement the record on appeal, the transcript is not a part of the record on appeal, and we cannot consider it. *Sanders v. Point After, Inc.*, 2 Haw. App. 65, 626 P.2d 193 (1981).

## 4.

Father contends that the family court abused its discretion when it denied his request for a continuance of the trial. Based on the record, we disagree.

The relevant facts are as follows. The family court's Social Study was filed on October 8, 1991. On October 29, 1991 a stipulated order set a two–day trial for the week of November 12, 1991, and stated, "[Mother] and [Mother's] attorney shall determine whether an extension of her military orders can be obtained so that trial may be continued[.]" On October 30, 1991, Father moved for a continuance of the trial because his witness, Dr. Virginia O. Fine, a psychologist, was unavailable from November 9, 1991 through November 21, 1991. At the November 1, 1991 calendar call, trial was scheduled to occur on November 14, 1991. November 23, 1991, was a Saturday and November 24, 1991 was a Sunday. The clerk's minutes of the November 5, 1991 hearing indicate that the family court's schedule did not permit it to hear the case after November 21, 1991 and before Mother's departure on November 25, 1991. Thus, it appears that the hearing had to occur on November 14, 1991 if it was going to occur before Mother's departure. The family court denied

Father's October 30, 1991 motion for a continuance and the trial occurred on November 14, 1991.

A request for a continuance based on the unavailability of a crucial witness may properly be denied (1) when the requesting party could have obtained the testimony of the crucial witness in the form of a deposition or (2) when the denial is not prejudicial. 9 WRIGHT & MILLER, FEDERAL PRACTICE AND PROCEDURE: *Civil* § 2352 (1971).

No later than October 30, 1991, Father knew (1) that the trial would occur during the week of November 12, 1991 and (2) that Dr. Fine was unavailable after November 8, 1991. There is nothing in the record to show that Father could not have deposed Dr. Fine before the trial.

The unavailability of a party's witness was not prejudicial if the party's case was not significantly impaired by the absence of the expert witness' testimony. Defendant's Exhibit E in evidence is a letter dated June 20, 1991 from Dr. Fine to the Family Court. It states in relevant part as follows:

> I have been seeing [Son] with [Father] in weekly therapy from May 14, 1991 to the present. They have a very close relationship and [Father] is very appropriate in his parenting skills. He teaches and explains things to his son; he is attentive without being over–concerned about every small thing.

> Since both parents will be moving to new assignments on the mainland before the year is over, I believe it would be in [Son's] best interest for both parents to share legal custody so that appropriate visitations can be worked out between them, since their schedules are not regular. At the present time, although [Father] cares

for [Son] about half of the time, he is not able to give parental permission for school excursions, medical treatment, etc. The problem will be worse when visitations are longer and the parents will be stationed at either side of the mainland.

Since [Father] is a very involved and caring parent, I feel he should be able to share at least legal custody of his son.

FOF 4, which Father did not appeal, states "That the only reason given by [Father] for a change of custody was the alleged attachment of [Son] to the natural child of [Father]."

Nothing in the record shows that Dr. Fine's testimony would have materially added to Exhibit E. Based on the record, we conclude that the family court did not abuse its discretion when it denied Father's request for a continuance.

### 5.

Based on the fact that the May 19, 1989 Divorce Decree contemplated and provided for the relocations of the parties within three years thereafter, Father contends that the parties' relocations to different parts of the continental United States in the latter part of 1991 was not a material change of circumstance that permitted the family court to change the visitation schedules in the May 19, 1989 Divorce Decree. We agree. In 1989 the family court knew that both Father and Mother would each be ordered to different duty stations within the following three years and reasonably entered an order providing for that future occurrence. If either party believed that the family court reversibly erred, their option was to appeal.

The relocations in 1991 were not material changes in circumstances.

## 6.

The May 19, 1989 Divorce Decree awarded Father summer visitation of two and one–half months. At that time, Father and Mother were both living in the City and County of Honolulu. When the parents reside far apart in different states, the family court's GFVS recommend a Type B visitation schedule. Under a Type B visitation schedule, "[d]epending on the age of the child, the maximum summer visitation period will be two months." The Social Study recommended two months of summer visitation. The December 10, 1991 Order awarded Father six weeks of summer visitation. Father contends that the family court abused its discretion. We agree.

FOF No. 6 and COL No. 3 state as follows:

[FOF] 6. That visitation by the non–custodial parent is set pursuant to Family Court policy which is used in all custody orders in the absence of valid reasons to deviate therefrom.

[COL] 3. That the visitation given to [Father] was set, at a minimum, pursuant to Family Court policy when the parents live in different states, and that [Father] failed [to] show justifiable reasons for a deviation from said policy.

FOF No. 6 and COL No. 3 contain errors. The first error is that the GFVS did not specify a minimum six–week summer visitation. The second error is that, since the GFVS is not statutorily authorized, it is neither the formal policy of the family court nor a legal presumption. *See **Gussin v. Gussin**, 9* Haw. App. 279, 836 P.2d 484

(1991), *vacated in part*, 73 Haw. 470, 836 P.2d 484 (1992) (property distribution).

FOF No. 5 states:

That a person seeking a change of custody must show a material change of circumstances since the previous custody order, and must show that such a change of custody is in the best interest of the child.

We agree with FOF No. 5. *See* HRS § 571–46 (Supp. 1992); *Doe VII v. Roe VII*, 8 Haw. App. 437, 809 P.2d 449 (1991) (child support), *Vorfeld v. Vorfeld*, 8 Haw. App. 391, 804 P.2d 891 (1991) (spousal support). This rule applicable to persons seeking a change of custody also applies to persons seeking a change of visitation. The question is, based on what facts did the family court reduce Father's summer visitation from two and one–half months to six weeks? The record reveals none. The Social Study recommended a change to two months but only because the GFVS recommended that as a maximum. The FOF made no attempt to state a factual basis for this change.

Only Father appealed and, with respect to visitation, he appealed only its reduction. Thus, we do not disturb the parts of the family court's December 10, 1991 Order that do not reduce Father's visitation privileges.

## CONCLUSION

Accordingly, in paragraph 2 of the family court's December 10, 1991 Order After Order or Decree, in line 5 of page 2, we vacate the words "six (6) weeks" and replace them with the words "two and one–half (2 1/2) months" from paragraph 2(f) of the May 19, 1989 Decree Granting

Absolute Divorce and Awarding Child Custody. In all other respects, we affirm the December 10, 1991 Order After Order or Decree.

*Barbara Lee Melvin* on the briefs for defendant–appellant.
*Robert M. Gordon* on the brief for plaintiff–appellee.