IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
January 31, 2018 Session

## MAUREEN DAVIS v. WELLS FARGO HOME MORTGAGE ET AL.

Appeal from the Chancery Court for Shelby County
No. CH-15-0991-2     Jim Kyle, Chancellor

_____

### No. W2016-02278-COA-R3-CV

_____

Homeowner brought a lawsuit asserting multiple challenges to the bank's administration of her mortgage and initiation of foreclosure proceedings. The bank filed a motion to dismiss, which was ultimately granted by the trial court, despite several post-judgment motions filed by the homeowner. On appeal, the bank argues that the homeowner's notice of appeal was not timely. Although we find that the homeowner's notice of appeal was timely, we conclude that the trial court did not err in granting the bank's motion to dismiss the homeowner's complaint because it fails to state a claim upon which relief may be granted.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court Affirmed**

ANDY D. BENNETT, J., delivered the opinion of the Court, in which J. STEVEN STAFFORD, P.J., W.S., and ARNOLD B. GOLDIN, J., joined.

Samuel Jacob Gowin and Jacqueline Strong Moss, Chattanooga, Tennessee, for the appellant, Maureen Davis.

Kavita Goswamy Shelat and Bradley E. Trammell, Memphis, Tennessee, for the appellees, Wells Fargo Home Mortgage and Secretary of Veteran's Affairs.

### OPINION

FACTUAL AND PROCEDURAL BACKGROUND

Maureen Davis executed a promissory note and deed of trust in 1993 to secure financing for $98,718 for her home on Monterey Drive in Memphis. Wells Fargo Home Mortgage, a division of Wells Fargo Bank, N.A., serviced Ms. Davis's loan until the deed of trust was foreclosed upon in August 2013. Following the foreclosure sale, the property was assigned to the Secretary of Veteran's Affairs.

In July 2015, Ms. Davis filed this lawsuit against Wells Fargo and the Secretary of Veteran's Affairs (collectively, "Wells Fargo").[1] The complaint includes numerous allegations. For example, Ms. Davis alleged that the defendants mismanaged her account, that the loan was predatory, that the foreclosure process violated her due process rights, that the defendants' conduct was "tantamount to fraud," that the defendants were guilty of false and deceptive practices, and that she did not receive notice of the foreclosure. The defendants filed a motion to dismiss the complaint on the ground that "none of Ms. Davis's allegations and statements support a cognizable claim." Along with their motion, the defendants submitted a memorandum and numerous exhibits showing Ms. Davis's extensive bankruptcy filings.

Ms. Davis did not file a response to the defendants' motion to dismiss. On February 10, 2016, the trial court entered a "Consent Order of Dismissal with Prejudice." On March 10, 2016, Ms. Davis, appearing pro se, filed a motion pursuant to Tenn. R. Civ. P. 60.02 to set aside the order entered by the trial court on February 10, 2016. Ms. Davis asserted that she had not consented to the entry of the previous order by her attorney, that she was in the process of securing new counsel, and that she was presently hospitalized. The defendants agreed to have the order set aside.

When the defendants re-set their motion to dismiss, Ms. Davis again did not appear in court. On June 7, 2016, the trial court determined that "Plaintiff's entire lawsuit fails to state a cognizable claim" and entered a "Final Order Dismissing Lawsuit with Prejudice and Judgment." Then, on July 6, 2016, Ms. Davis (who had retained another attorney) filed a motion to set aside this final order of dismissal, again citing Tenn. R. Civ. P. 60.02. She asserted that her previous attorney was still her attorney of record at the time of the June 7, 2016 hearing, that he had negligently failed to appear at the hearing, and that she, herself, was in the hospital at the time of the hearing.

On September 26, 2016, the trial court entered an order withdrawing Ms. Davis's motion to set aside (in accordance with her filing of a notice of withdrawal of her motion). The court stated that its order of June 7, 2016, was a final order of dismissal and judgment pursuant to Rule 54.01. The court further provided: "To ensure clarity among the parties, however, the time for any appeal by Ms. Davis will run from entry of this Order Withdrawing Plaintiff's Rule 60 Motion."

Ms. Davis filed a notice of appeal on October 26, 2016.

---

[1] In the appellees' brief, Wells Fargo is identified as the "primary defendant," and the brief refers to the appellees collectively as "Wells Fargo."

ISSUES ON APPEAL

In her appeal, Ms. Davis raises the following issues: (1) whether her complaint stated a sufficient cause of action to challenge the foreclosure, including improper notice; and (2) whether she pled a cause of action for fraud pursuant to Tenn. R. Civ. P. 8.01 and 9.02.[2] Wells Fargo raises the additional issue of whether Ms. Davis filed a timely notice of appeal.[3]

ANALYSIS

I. Notice of Appeal.

The issue presented, which has not been addressed in Tennessee, is whether Ms. Davis's notice of appeal was timely filed in light of her withdrawal of her July 6 post-judgment motion. Rule 4(b) of the Tennessee Rules of Appellate Procedure provides as follows:

> In a civil action, if a timely motion under the Tennessee Rules of Civil Procedure is filed in the trial court by any party: (1) under Rule 50.02 for judgment in accordance with a motion for a directed verdict; (2) under Rule 52.02 to amend or make additional findings of fact, whether or not an alteration of the judgment would be required if the motion is granted; (3) under Rule 59.07 for a new trial; (4) under Rule 59.04 to alter or amend the judgment; the time for appeal for all parties shall run from the entry of the order denying a new trial or granting or denying any other such motion.

The first argument Wells Fargo makes concerning the notice of appeal is that Ms. Davis's second post-judgment motion did not extend the time period for appeal. Ms. Davis filed two post-judgment motions, one on March 10, 2016, and another on July 6, 2016, both denominated Rule 60 motions. Under Tennessee law, however, courts consider the substance of a motion rather than its title. *Tenn. Farmers Mut. Ins. Co. v. Farmer*, 970 S.W.2d 453, 455 (Tenn. 1998). Thus, we will treat Ms. Davis's motions seeking to set aside the judgments dismissing her complaint as filed pursuant to Tenn. R.

---

[2] Ms. Davis raised a third issue of whether she should be "denied the ability to participate [in] any class action or lawsuit or settlement resulting from [the improper] opening of accounts." We know of no connection between any class action or settlement and the present lawsuit and decline to address this issue.

[3] By order entered on June 29, 2017, this Court directed Ms. Davis to show cause why her appeal should not be dismissed for failure to timely file the notice of appeal. Ms. Davis filed a response to the order. By order entered on August 2, 2017, this Court directed both parties to address in their briefs the issue of whether the notice of appeal was timely filed.

- 3 -

Civ. P. 59.04. Because Ms. Davis's motions were filed within thirty days of the order being challenged, they appear to fit within the parameters of Rule 59.04.[4]

Rule 59.01 of the Tennessee Rules of Civil Procedure provides that, "Motions to reconsider [motions filed under Rule 50.02, Rule 52.02, Rule 59.07, or Rule 59.04] are not authorized and will not operate to extend the time for appellate proceedings." Thus, under Tennessee law, a party cannot file serial post-judgment motions to alter or amend seeking the same relief; such motions do not operate to extend the time for filing a notice of appeal. *See Legens v. Lecornu*, No. W2013-01800-COA-R3-CV, 2014 WL 2922358, at *8-9 (Tenn. Ct. App. June 26, 2014); *Gassaway v. Patty*, 604 S.W.2d 60, 61 (Tenn. Ct. App. 1980). Citing *Gassaway*, the advisory commission comment to Tenn. R. Civ. P. 59.01 states: "Filing and serving motions in serial fashion will not extend the time for filing a notice of appeal with the trial court clerk. In particular, motions to reconsider rulings on any of the listed motions will not extend the time for filing a notice of appeal."

Yet, this rule concerning post-judgment motions is not absolute. In *Legens v. Lecornu*, 2014 WL 2922358, at *13, the Court of Appeals explained that "[t]he purpose of a Rule 59 motion to alter or amend a judgment is to prevent unnecessary appeals by providing the trial court with an opportunity to correct errors before the judgment becomes final." The plaintiff's two motions in *Legens* differed substantively. *Legens*, 2014 WL 2922358, at *10. The first motion sought reversal of the trial court's finding that there was no fraud in the sale of a vehicle to plaintiff. *Id.* Upon receiving a favorable ruling, the plaintiff filed a second motion seeking clarification as to the amount of the purchase price to be returned as well as an award of attorney fees. *Id.* The appellate court concluded that the plaintiff's "second motion to alter or amend . . . was not an impermissible motion to reconsider a Rule 59 motion." *Id.* at *14. The second motion, therefore, tolled the time period for filing the notice of appeal. *Id.*

In the present case, Ms. Davis's first post-judgment motion was filed on March 10, 2016. This was a pro se motion in which Ms. Davis sought to set aside the consent order of dismissal entered on February 10, 2016, without her consent. The second post-judgment motion, filed on July 6, 2016, sought to set aside the final order dismissing the lawsuit entered on June 7, 2016. Thus, these two post-judgment motions were not filed in response to the same order and did not seek the same relief. We do not, therefore, see an issue with the effectiveness of the July 6, 2016 motion by virtue of it being a second post-judgment motion.

---

[4] Rule 59.04 of the Tennessee Rules of Civil Procedure states: "A motion to alter or amend a judgment shall be filed and served within thirty (30) days after the entry of the judgment." If a party waits more than thirty days after the judgment to seek relief, he or she must rely on Tenn. R. Civ. P. 60.02. *Discover Bank v. Morgan*, 363 S.W.3d 479, 489 (Tenn. 2012).

We must now proceed to the more difficult question of whether Ms. Davis's withdrawal of her July 2016 post-judgment motion deprived the motion of its tolling effect for purposes of the running of the time for the filing of her notice of appeal. Tennessee Rule of Appellate Procedure 4(b) does not answer this question because withdrawal of a motion does not technically constitute the granting or denial of the motion. From a purely logical standpoint, one might conclude that, once a motion is withdrawn, it is as if the motion was never filed. Thus, it could even be argued that the motion did not toll the running of the time for filing the notice of appeal until "the entry of the order denying a new trial or granting or denying any other such motion." TENN. R. APP. P. 4(b).

Although Tennessee courts have not addressed this issue, caselaw from other jurisdictions provides guidance. The analogous federal appellate rule, Fed. R. App. P. 4(a)(4),[5] also does not expressly address the circumstance where a party withdraws one of the motions that tolls the time provided under the rule for filing a notice of appeal. There are a few federal circuits that have ruled on the issue, and most have concluded that "withdrawal of a motion did not deprive it of tolling effect." 16A FED. PRAC. & PROC. JURIS. § 3950.4 (4th ed. Supp. 2018). In *United States v. Rodriguez*, 892 F.2d 233 (2d Cir. 1989), Rodriguez was convicted of cocaine possession with intent to distribute and sentenced in a judgment entered on January 13, 1989. *Rodriguez*, 892 F.2d at 234. On February 9, 1989, the government moved the court to reconsider the sentence in light of a recent Supreme Court decision. *Id.* Then, on March 6, 1989, the government sent a letter to the district court withdrawing its motion to reconsider. *Id.* The government asked the court to extend its time for appeal under Fed. R. App. P. 4(b),[6] and the district court

---

[5] Federal Rule of Appellate Procedure 4(a)(4)(A) provides:

> If a party files in the district court any of the following motions under the Federal Rules of Civil Procedure--and does so within the time allowed by those rules--the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion:
> (i) for judgment under Rule 50(b);
> (ii) to amend or make additional factual findings under Rule 52(b), whether or not granting the motion would alter the judgment;
> (iii) for attorney's fees under Rule 54 if the district court extends the time to appeal under Rule 58;
> (iv) to alter or amend the judgment under Rule 59;
> (v) for a new trial under Rule 59; or
> (vi) for relief under Rule 60 if the motion is filed no later than 28 days after the judgment is entered.

[6] The provision of Fed. R. App. P. 4(b) at issue in *Rodriguez* applies only in criminal cases and provides:

> Upon a finding of excusable neglect or good cause, the district court may--before or after the time has expired, with or without motion and notice--extend the time to file a notice of appeal for a period not to exceed 30 days from the expiration of the time otherwise

extended the time for appeal to March 15, 1989. *Id.* at 235. The court also stated that the government's motion for reconsideration was "denied as withdrawn." *Id.* The government filed its notice of appeal on March 15, 1989. *Id.*

On appeal, Rodriguez argued that the government's notice of appeal filed on March 15, 1989, was not timely. *Id.* The Court of Appeals reasoned as follows:

> It is conceded that the government had at least 30 days to appeal from the January 13, 1989 judgment of conviction. Within that period—on February 9, 1989—the government moved for reconsideration. Under the cases just cited, this stopped the running of the time period clock. On March 15, the district court endorsed the motion for reconsideration of the January 13 sentence with the words "[m]otion denied as withdrawn." It seems reasonable to construe this as a denial of the government's motion. Under *[United States v.] Dieter*, the finality of the judgment was thus suspended until March 15. *See Dieter*, [429 U.S. 6, 8, 97 S.Ct. 18, 19 (1976) (per curiam)]. The full 30-day clock started running again on March 15, and the government's notice of appeal filed the same day was obviously timely.

*Id.* Although the government conceded that it withdrew its motion for reconsideration in its letter on March 6, the trial court determined that it did not need to decide whether the time for filing the notice of appeal was tolled until March 6 (when the motion was withdrawn) or until March 15 (when the district court acknowledged the withdrawal and denied the motion on that basis) because, in either case, the notice of appeal was timely. *Id.* at 235-236; *see also Worcester v. Springfield Terminal Ry. Co.*, 827 F.3d 179, 181 (1st Cir. 2016) (holding that trial court's verbal granting of motion to withdraw motion for new trial, noted on the docket, began clock running on time for filing notice of appeal); *Brae Transp., Inc. v. Coopers & Lybrand*, 790 F.2d 1439, 1442 (9th Cir. 1986) (holding that appeal period was tolled by motion to vacate or stay judgment although motion was withdrawn; time for appeal began to run from date of order "disposing of" motion to vacate or stay the judgment).[7]

The Tenth Circuit case of *Vanderwerf v. SmithKline Beecham Corp.*, 603 F.3d 842 (10th Cir. 2010), presents the arguments for reaching the opposite result as well as fleshing out the reasons supporting the approach taken in the previous cases. The

---

> prescribed by this Rule 4(b).

FED. R. APP. P. 4(b)(4).

[7] In the Sixth Circuit, there has been one unpublished decision in which the Court reached the same conclusion as the cases cited here. *See Chrysler Motors Corp. v. Country Chrysler, Inc.*, 884 F.2d 578, at *1 (6th Cir. 1989) ("We construe the motion for reconsideration as 'denied' as of the date of the withdrawal, thereby permitting the [appellants] thirty days from that date in which to appeal.").

Vanderwerf family sued the SmithKline drug company after the father committed suicide while being treated for depression and anxiety with the drug Paxil. *Vanderwerf*, 603 F.3d at 843. The district court granted summary judgment in favor of SmithKline on January 9, 2008. *Id.* The Vanderwerfs filed a motion to reconsider under Fed. R. Civ. P. 59(e) on January 17, 2008. *Id.* at 845. Then, on August 8, 2008, they filed a notice of withdrawal of the Rule 59 motion and a notice of appeal. *Id.* The Court of Appeals concluded that it lacked jurisdiction because the notice of appeal was not timely filed. *Id.*

In reaching its conclusion, the Tenth Circuit elucidated its reasoning and made the following pertinent statements:

> Here, the Vanderwerfs' withdrawal of the Rule 59 motion on August 8, 2008, without the entry of an order by the district court left the January 9, 2008 order as the order being appealed. Because that order was seven months old, the time for filing a notice of appeal expired approximately six months before, in February 2008. Federal Rule of Appellate Procedure 4 requires entry of an "order disposing of [the Rule 59] motion" to give the appealing party the benefit of Rule 4(a)(4)(A)(iv). The Vanderwerfs' "withdrawal of their Rule 59 motion leaves the record as if they had never filed the motion in the first place." SKB's Motion to Dismiss Appeal at 6 (citing 56 Am. Jur. 2d *Motions, Rules and Orders* § 32 (2009) ("The effect of a withdrawal of a motion is to leave the record as it stood prior to filing as though the motion had never been made.")).
> . . . .
> The remaining cases relied upon by the Vanderwerfs similarly fail to convince us that the timing of their notice of appeal bestows jurisdiction on this court. The cases primarily focus on when the thirty-day clock should be reset for purposes of determining the timeliness of a party's notice of appeal, and indicate that the proper indicator is the date of the filing of the order acknowledging the withdrawal of or denying the Rule 59 motion.
>
> The Vanderwerfs' strongest case appears to be *United States v. Rodriguez,* 892 F.2d 233, 234 (2d Cir.1989), where the government filed a Rule 59 motion, and then sent a letter withdrawing it. Eleven days later, the district court acknowledged the letter in a ruling stating "motion denied as withdrawn," which the Second Circuit construed as "a denial of the government's [Rule 59] motion." *Id.* The Second Circuit ruled that the withdrawn motion tolled the time limitation on bringing an appeal under Rule 4(b), but indicated it would not "decide whether the time period was tolled only until . . . the motion was withdrawn, or until . . . the district court acknowledged that the motion was withdrawn and denied it on that basis." *Id.* at 236. Here, by contrast the Vanderwerfs' counsel did not wait until the district court had the opportunity to rule, and thus we have no

order disposing of the Rule 59(e) motion to restart the clock. *See Brae Transp. v. Coopers & Lybrand,* 790 F.2d 1439, 1442 (9th Cir. 1986) (clarifying that the clock began ticking for the filing of the notice of appeal when the "order was issued disposing of the Rule 59 motion," not when the Rule 59 order was withdrawn).

The Vanderwerfs also point to the Sixth Circuit's brief unpublished disposition involving a variety of parties and claims in *Chrysler Motors Corp. v. Country Chrysler, Inc.,* No. 89-1472, 1989 WL 100084, at *1 (6th Cir. July 31, 1989), where the party seeking to appeal after the withdrawal of a Rule 59 motion was allowed to do so. The case did not explain whether or not there was a separate ruling from the district court, merely noting that the pending motion was deemed "denied" as of the date of the withdrawal. The key distinguishing factor is that in *Chrysler* the parties seeking to appeal (the defendants-counterclaimants-third-party plaintiffs) were not in control of the litigation, because they did not file the post-trial motion. *See id.* Rather the quite distinct third-party defendant-appellee filed the Rule 59 motion. Thus, the defendants-counterclaimants-third-party plaintiffs "were effectively prohibited from filing a notice of appeal" while the third-party defendant-appellee's motion was pending, and the motion was deemed "denied" as of the date of the withdrawal. *See id.* Here, by contrast, the Vanderwerfs were in control of the litigation and were solely responsible for ensuring that the deadlines were met.

Although we note that there is no suggestion that the Vanderwerfs acted in bad faith, we are hamstrung by the mandatory procedural rules. The Vanderwerfs had other options, which may have allowed this court to take jurisdiction. First, the Vanderwerfs could have filed a motion requesting a ruling. Second, they could have continued to wait for a ruling, or sought a writ of mandamus in this court, which, if granted would compel the district court to rule on the Rule 59 motion. Third, they might have filed a motion for an extension of time under Federal Rule of Appellate Procedure 4(a)(5)(A)(ii), provided that they might show good cause or excusable neglect underlying the untimely notice. Fourth, they might have filed a premature notice of appeal that would ripen into a timely notice of appeal when the district court finally ruled. *See Fields v. Okla. State Penitentiary,* 511 F.3d 1109, 1111 (10th Cir. 2007). Finally, it seems the best option may have been for the Vanderwerfs to have moved to withdraw the motion, in hopes that the district court would rule on that motion thereby triggering a 30-day period for the filing of a timely appeal. We conclude that none of the Vanderwerfs' cases help them establish that their appeal was timely; we thus must dismiss this appeal.

*Id.* at 846-48 (footnote omitted).

The dissent in *Vanderwerf* characterized the majority's view to be that "the filing of a Rule 59(e) motion did not toll the deadline to file a notice of appeal because the district court never ruled on the motion." *Id.* at 849. "Under the language of Rule 4," the dissent stated, "it is not a district court's order disposing of a Rule 59(e) motion that *triggers* tolling." Rather, the timely filing of a Rule 59(e) motion triggers tolling; the thirty-day filing deadline begins to run upon the filing of an order disposing of the motion. *Id.* After citing *Rodriguez* and *Brae*, the dissent addressed the equitable arguments made by the majority:

> First, [SKB] argues that it was unfairly forced to spend time and money briefing the Rule 59(e) motion, only for the Vanderwerfs to withdraw it unilaterally. Had the district court ruled on the motion and upheld its earlier decision, however, SKB would have expended exactly the same costs. Thus SKB's costs arose because the Vanderwerfs filed a motion, not because they withdrew it. Second, SKB argues that the rule proposed in this dissent would allow abuse: A party could file a motion to alter or amend the judgment in order to extend its time to file a notice of appeal, and then withdraw the motion and file the notice. These actions would artificially extend the filing deadline, drive up the other party's legal fees, and waste the district court's time. Such a scheme would fail, however, if the district court ruled on the underlying motion in a timely fashion, as we expect district courts will do. In this case, there is no accusation that the Vanderwerfs acted in bad faith. A better rule would sanction only those parties who seek to abuse the system, rather than punishing innocent parties who simply want what they deserve: their day in court.

*Id.* at 850.

In a more recent Tenth Circuit case, the court reached the opposite result from *Vanderwerf*. *De Leon v. Marcos*, 659 F.3d 1276 (10th Cir. 2011), is a class action consisting of human rights claims brought against former Philippines President Ferdinand Marcos. *De Leon*, 659 F.3d at 1277. On September 23, 2010, the district court issued a judgment in one case. *Id.* at 1279. De Leon filed a motion to vacate or modify the decision under Rules 59 and 60 of the Federal Rules of Civil Procedure on September 30. *Id.* On December 29, 2010, he filed a notice of withdrawal of the Rule 59 motion and a notice of appeal. *Id.* The clerk of the Court of Appeals then asked the parties to brief the issue of whether the court lacked jurisdiction to hear the appeal. *Id.* at 1280. De Leon returned to the district court two days later and filed a "Motion for Entry of Order Terminating Action Based on Withdrawal of Motion" in an effort to remedy the jurisdictional problem. *Id.* The district court responded by granting in part and denying in part De Leon's motion for entry of an order. *Id.* The district court granted the motion

insofar as it deemed De Leon's motion to vacate withdrawn and rendered moot. *Id.* The district court denied the motion insofar as "the case has already been terminated by entry of Judgment on September 27, 2010." *Id.*

On appeal, the court in *De Leon* was faced with the issue of whether it had jurisdiction and, specifically, whether De Leon was entitled to the tolling provisions of Rule 4(a)(4)(A). *Id.* After reviewing *Vanderwerf* and the authorities cited therein, the court decided that the case before it was analogous to *Rodriguez*. The Tenth Circuit reasoned as follows:

> De Leon's case is analogous to *Rodriguez* rather than *Vanderwerf,* and therefore we conclude that De Leon is entitled to tolling. As in *Rodriguez,* there is a district court order acknowledging the withdrawal— the order granting in part De Leon's "Motion for Entry of Order Terminating Action Based on Withdrawal of Motion." *See* ECF No. 110 ("granting [in part] the motion insofar as the Court deems the Plaintiff to withdraw [his] Motion to Vacate, which is thus deemed withdrawn and rendered moot"). Although, like the Vanderwerfs, De Leon "did not wait" to file his notice of appeal until the district court could rule on the Rule 59 motion, *Vanderwerf,* 603 F.3d at 847, the district court's order acknowledging the withdrawal of De Leon's Rule 59 motion is sufficient for purposes of Rule 4(a)(4)(A). *See Rodriguez,* 892 F.2d at 236; 20 James Wm. Moore et al., *Moore's Federal Practice* § 304.13[1] (3d ed. 2011) ("A timely post-decisional motion does not defer the start of the appeal period if the motion is withdrawn without an order of the district court either disposing of the motion or *acknowledging withdrawal of the motion.*" (emphasis added)). There was no analogous order in *Vanderwerf,* but De Leon's filings are akin to the very type of action we considered a "best option" in *Vanderwerf,* namely, to move "to withdraw the motion [for Rule 59 relief] . . . thereby triggering the 30-day period for the filing of a timely appeal." *Vanderwerf,* 603 F.3d at 848.

*Id.* at 1281-82.

This court is aware of two published state court decisions on the effect of withdrawn post-judgment motions on the time for filing a notice of appeal. In *State v. Bao*, 690 N.W.2d 618, 622 (Neb. 2005), a criminal defendant filed a pro se motion on July 25, 2003, for reconsideration of an order denying him postconviction relief. Then, on October 16, 2003, counsel for the defendant withdrew the motion for reconsideration; that same day, the court entered an order dismissing the motion. *Bao*, 690 N.W.2d at 622. The defendant then filed a pro se request to reinstate the motion for reconsideration on October 21, which the court denied. *Id.* at 622-23. On November 14, 2003, the defendant filed a notice of appeal, and the State moved to dismiss the appeal as untimely.

- 10 -

*Id.* at 623.  The State argued that the defendant's withdrawal of the motion to alter or amend (motion for reconsideration) was not a "ruling upon the motion" for purposes of Nebraska's statute concerning the filing of post-judgment motions and the tolling of the time for filing a notice of appeal.  *Id.* at 624.  In concluding that the defendant's notice of appeal was timely, the Supreme Court of Nebraska emphasized that, upon being advised that the defendant's "motion for reconsideration was withdrawn, the court entered an order dismissing the motion."  *Id.* at 625.  The court considered this to constitute a "ruling" within the meaning of the statute.  *Id.*  The Nebraska court also relied upon federal rulings, including *Rodriguez*, 892 F.2d at 233, to reach its conclusion.  *Id.*

The Hawaii Court of Appeals reached a similar result in *Nadeau v. Nadeau*, 861 P.2d 754, 757 (Haw. Ct. App. 1993) (overruled on other grounds by *Waldecker v. O'Scanlon*, 375 P.3d 239 (Haw. 2016)).  The court in that case held that the tolling effect of father's motion for reconsideration continued until the family court ruled on his motion seeking to withdraw his motion for reconsideration.  *Nadeau*, 861 P.2d at 757.  Therefore, father's notice of appeal was timely.  *Id.*  In so ruling, the Hawaii court relied upon *Rodriguez*, 892 F.2d at 236, and *Brae*, 790 F.2d at 1439.  *Id.*

Based upon the caselaw, the prevailing view is that a movant's good faith withdrawal of a post-judgment motion should not eliminate the tolling effect of the motion for purposes of filing a notice of appeal.  We agree with the majority view and apply it to the facts of this case.  Ms. Davis's filing of a motion to alter or amend the judgment on July 6, 2016, tolled the running of the time for filing a notice of appeal. The trial court's order entered on September 26, 2016, withdrawing Ms. Davis's motion to alter or amend (in accordance with her notice of withdrawal) constituted a ruling "granting or denying another other such motion" and triggered the running of the time for filing a notice of appeal pursuant to Tenn. R. App. P. 4(b).  The September 26, 2016 order was, effectively, a denial of the motion for purposes of Tenn. R. App. P. 4(b).  We, therefore, conclude that Ms. Davis's notice of appeal filed on October 26, 2016, was timely filed.[8]

## II. Sufficiency of complaint.

We consolidate the first and second issues Ms. Davis raises on appeal into one issue:  whether her complaint is sufficient to make out one or more causes of action against Wells Fargo.  We discern four distinct groups of allegations in the complaint:  (A) allegations of mismanagement, violations of the deed of trust, and predatory lending; (B) allegations that the deed of trust is a contract of adhesion and that the foreclosure process

---

[8] A law review note on this issue provides a good discussion of the various policy considerations involved.  *See* Lena Husani Hughes, *Time Waits for No Man—But Is Tolled for Certain Post-Judgment Motions:  Federal Rule of Appellate Procedure 4(A)(4) and the Fate of Withdrawn Post-Judgment Motions*, 112 COLUM. L. REV. 319 (2012).

in Tennessee results in the denial of citizens' due process; (C) allegations of fraud; and (D) allegations that Ms. Davis did not receive notice, or proper notice, of the foreclosure.

## A. Mismanagement/violations of the deed of trust

The pertinent allegations in paragraph four of the complaint provide as follows:

[T]he Defendant mortgage servicer has mismanaged [Ms. Davis's] account, overcharged her on the fees and expenses on the account, and co-mingled the fees and expenses on the home mortgage with an escrow account and/or escrow advances that are not supposed to exist.

Plaintiff further alleges that the charges and fees which have been run up on the account are excessive, duplicative, and have led to further and additional defaults. Plaintiff also alleges that the application of funds by the Defendant has been in violation of the Deed of Trust and has been inconsistent in application.

Plaintiffs allege that this loan was predatory, cost excessive, and not truthfully or correctly explained to her and was handled in a discriminatory basis as to the spouse of a veteran in a way that would have never been allowed to the veteran directly. For reasons that aren't clear the servicer wants possession of this house. She has sought the help of lawyers, Congressmen, and others. Nothing works. When she calls the VA they want her to call the servicer, Wells Fargo; when she calls the VA they want her to call Wells Fargo. It has been a vicious circle as of late in which she has been able to maintain possession of the property by the hardest and barest means possible.

Later in the complaint, Ms. Davis asserted that the balance demanded by Wells Fargo before the foreclosure was in error.

In the trial court's June 7, 2016 order, the court stated:

Plaintiff's allegations about the balance of her mortgage loan, as well as charges and fees assessed to her mortgage loan, are precluded by bankruptcy court orders confirming her Chapter 13 plans in her 2006, 2011, and especially her November 2013 bankruptcy proceedings under the doctrine of *res judicata*.

We agree with the trial court's conclusion.

Res judicata, or claim preclusion, "'bars a second suit between the same parties or their privies on the same claim with respect to all issues which were, or could have been, litigated in the former suit.'" *Boyce v. LPP Mortg. Ltd.*, 435 S.W.3d 758, 764 (Tenn. Ct.

App. 2013) (quoting *Jackson v. Smith*, 387 S.W.3d 486, 491 (Tenn. 2012)).  A party relying on the defense of res judicata:

> "must demonstrate (1) that the underlying judgment was rendered by a court of competent jurisdiction, (2) that the same parties or their privies were involved in both suits, (3) that the same claim or cause of action was asserted in both suits, and (4) that the underlying judgment was final and on the merits."

*Id*. (quoting *Jackson*, 387 S.W.3d at 491).  Ms. Davis's three chapter 13 bankruptcy cases were initiated in the Bankruptcy Court for the Western District of Tennessee, and that court's orders confirming bankruptcy plans were final and on the merits.  *See In re Chattanooga Wholesale Antiques, Inc.*, 930 F.2d 458, 463 (6th Cir. 1991) (stating that the confirmation of a bankruptcy plan "has the effect of a judgment by the district court and res judicata principles bar relitigation of any issues raised or that could have been raised in the confirmation proceedings").  Thus, the first and fourth elements of the res judicata defense are satisfied.  As to the second element of res judicata, requiring that both suits involve the same parties or their privies, both the bankruptcy proceedings and the current lawsuit involve Ms. Davis and Wells Fargo as parties.  *See Sanders Confectionery Prods., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 480-81 (6th Cir. 1992) (stating that creditors qualified as parties to bankruptcy proceedings for purposes of res judicata).

The third element requires that the "same claim or cause of action was asserted in both suits."  *Boyce*, 435 S.W.2d at 764.  Tennessee applies the "transactional" approach, as described in the Restatement (Second) of Judgments, to determine whether an earlier judgment and a pending lawsuit involve the same cause of action for purposes of applying the doctrine of res judicata. *Creech v. Addington*, 281 S.W.3d at 380-81 (Tenn. 2009). The Restatement articulates this standard as follows:

> When a valid and final judgment rendered in an action extinguishes the plaintiff's claim . . ., the claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

RESTATEMENT (SECOND) OF JUDGMENTS § 24(1). Comment b to the Restatement explains that the term "transaction" refers to "a natural grouping or common nucleus of operative facts."  *See also Davis v. City of Memphis*, No. W2016-00967-COA-R3-CV, 2017 WL 634780, at *7 (Tenn. Ct. App. Feb. 16, 2017) (discussing claim preclusion and requirement of "factual overlap").  Ms. Davis's complaint challenges the amount owed on and the legality of the Wells Fargo mortgage.  These allegations arise out of the same series of transactions or set of operative facts as the bankruptcies and should have been resolved at the time of the bankruptcies.

## B. Allegations regarding deed of trust and due process

Paragraph five of Ms. Davis's complaint states:

> Plaintiff alleges that the Deed of Trust in this instance is a contract of adhesion; not contemplated, read or negotiated by the parties, and that the process in Tennessee of foreclosure by a Trustee on the courthouse steps denies citizens of rights they would otherwise have to due process under the law.

Similar claims against Wells Fargo, using some of the exact same language, were dismissed by the court in *Ivey v. Wells Fargo Home Mortgage*, No. 15-2259-STA-cgc, 2015 WL 12826638, at *3 (W.D. Tenn. Sept. 28, 2015). The court reasoned as follows:

> The Court finds that Plaintiff's lone statement about the Deed of Trust being a contract of adhesion amounts to a legal conclusion, and not a fact pleading. Therefore, the allegation is not entitled to any presumption of truth. Stripping the pleadings as a whole of this isolated conclusion of law, the Court holds that Plaintiff has failed to allege any facts in support of this theory, let alone all of the elements for establishing such a claim. Therefore, the Court holds that any allegation that the Deed of Trust was a contract of adhesion is subject to dismissal.
> . . . .
> Next, the Court turns to the Complaint's passing mention that "the process in Tennessee of foreclosure by a Trustee on the courthouse steps denies citizens of rights they would otherwise have to due process under the law." The Court holds that this claim lacks merit. The Tennessee Court of Appeals has held that a non-judicial foreclosure does not implicate due process because the sale does not involve state action. [Footnote citing *CitiMortgage, Inc. v. Drake*, 410 S.W.3d 797, 804 (Tenn. Ct. App. 2013).] Plaintiff has not alleged any state action here, only a sequential foreclosure process between two private parties governed by the Deed of Trust. Therefore, Defendant's Motion is GRANTED as to this claim.

*Ivey*, 2015 WL 12826638, at *3 (footnotes omitted). For the same reasons, we find the allegations in paragraph five of Ms. Davis's complaint to be without merit.

## C. Allegations of fraud

In paragraph six of her complaint, Ms. Davis alleged as follows:

> The defendants' conduct has been tantamount to fraud and they are guilty of false and misleading practices.

- 14 -

In particular, it is alleged to be *false and deceptive* to:
a) Have collection employees who refuse to give their names;
b) Have collection employees that refuse to put anything in writing; and,
c) Reject as out of hand a home loan modification shortly before a scheduled sale.

With respect to the final allegation, regarding loan modification, the trial court concluded that it "must be dismissed because [Ms. Davis] has neither a contractual nor a statutory right to a loan modification." We agree. *See Clay v. First Horizon Home Loan Corp.*, 392 S.W.3d 72, 77 (Tenn. Ct. App. 2012) (concluding that there is no private right of action to enforce the Home Affordable Modification Program). The trial court further held that the remaining allegations of paragraph six lacked "the context or factual support to satisfy Tennessee's pleading requirements under Rules 8 and 12, and 9 for fraud, and must be dismissed." Again, we agree.

Rule 9.02 of the Tennessee Rules of Civil Procedure states:

In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

Thus, "[a]llegations of fraud must be plead with particularity." *Kincaid v. SouthTrust Bank*, 221 S.W.3d 32, 41 (Tenn. Ct. App. 2006). To pass the particularity test, the petition must plead, at a minimum, the actors and location where the representations were made, and the substance of each alleged misrepresentation. *Strategic Capital Res., Inc. v. Dylan Tire Indus., LLC,* 102 S.W.3d 603, 611 (Tenn. Ct. App. 2002). Ms. Davis's complaint does not provide any details. We agree with the trial court that the complaint does not satisfy the particularity required by Tenn. R. Civ. P. 9.02.

### D. Allegations regarding insufficient notice

Finally, in paragraph seven of her complaint, Ms. Davis alleged that "she did not get notice of this foreclosure, or proper notice of this foreclosure as required by state statute." The trial court concluded that Ms. Davis "does not state a claim for purported failure to receive notice of the foreclosure sale based on contractual and statutory language that notice only needs to be sent by the lender, not received by the borrower."

Although the deed of trust requires the trustee to publish notices of a foreclosure sale, it states that, in the event of the grantor's default, "the entire indebtedness and all obligations secured shall, at the option of the Holder, become immediately due and collectible without *notice* . . . ." (Emphasis added). There is no requirement under the deed of trust that the grantor receive notice of the foreclosure. Tennessee Code Annotated section 35-5-101(e) provides that a trustee shall send notice of a foreclosure

- 15 -

sale to the debtor on or before the first date of publication of the advertisement of the foreclosure sale required by Tenn. Code Ann. § 35-5-104. There is no statutory requirement that the notice be received by the debtor. In this case, the trustee's deed signed by attorney Kristin Camp includes the following testimony:

> WHEREAS, in pursuance of said request by said beneficiary, advertisement and notice of the sale identifying all interested parties of said property was made and given [in] conformity with the terms and provisions of said Deed of Trust, and Tenn. Code Ann. § 35-5-104;

We conclude that Ms. Davis's notice argument is without merit.

CONCLUSION

The judgment of the trial court is affirmed, and this matter is remanded with costs of appeal assessed against the appellant, Maureen Davis.

_____
ANDY D. BENNETT, JUDGE